**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**
**in the UNITED STATES DISTRICT COURT for the SOUTHERN DISTRICT of GEORGIA**

JIMMY ROGERS PRO SE

_____

_____

_____
(Enter above full name of plaintiff or plaintiffs)

v.

ADEWUNMI SOBUWALE, M.D.; THOMAS LOWRY, M.D.
CHRISTINE JIMINEZ, P.A.; DR. DUNNE; LISA JOHNSON;
MEDICAL DIRECTOR; SANDRA MOORE, WARDEN OF CARE
AND TREATMENT (NEXT PAGE FOR ADDITION DEFENDANT)
(Enter above full name of defendant or defendants)

CV602 - 83

WITH MOTION FOR INJUNCTION
AND EMERGENCY MOTION FOR
TEMPORARY RESTRAING ORDER
WITH AN PROTECTION ORDER

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office

_____ 2022

Deputy Clerk

I.    Previous lawsuits

   A.    Have you begun other lawsuits in state or federal court dealing with the same facts
         involved in this action?                              Yes_____  No_X_

         if your answer to A is yes, describe each lawsuit in the space below. (If there is more
         than one lawsuit, describe the additional lawsuits on another piece of paper, using
         the same outline.)

         1.    Parties to this previous lawsuit:

               Plaintiffs:    _____
                              _____

               Defendants:    _____
                              _____

         2.    Court (if federal court, name the district; if state court, name the county):

               _____

         3.    Docket number:    _____

         4.    Name of judge assigned to case:    _____

## ADDITION DEFENDANTS

ROY BARNES, GOVERNOR, STATE OF GEORGIA,
GEORGIA STATE PRISON HEALTH CARE PROVIDER,
JOHNNY SIKES, REGIONAL DIRECTOR,
HUGE SMITH, WARDEN OF GEORGIA STATE PRISON,
JIM WETHERINGTON, COMMISSIONER OF GEORGIA DEPARTMENT OF CORRECTIONS,
VISON SMITH, UNIT MANAGER,
JOHN DOES AND JANE DOES,
IN THEIR OWN INDIVIDUAL PERSONAL CAPACITY, AND
IN THEIR OWN INDIVIDUAL OFFICIAL CAPACITY,

5.  Disposition
    (for example, was the case dismissed? appealed? is it still pending?):

    _____

6.  Approximate date of filing lawsuit: _____

7.  Approximate date of disposition: _____

8.  Were you allowed to proceed *in forma pauperis* (without prepayment of fees)?                                   Yes ⎯✓⎯  No_____

B.  While incarcerated or detained in any facility, have you brought any lawsuits in federal court which deal with facts other than those involved in this action?
                                                         Yes __X__  No_____

If your answer to B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  Parties to previous lawsuit:

    Plaintiffs: ~~Jimmy Rogers v Johnny Sikes~~

    Defendants: Johnny Sikes

2.  Court (name the district):

    ~~Southern~~ Northern District of Georgia, Gainesville Div.

3.  Docket number: 2:96-CV-17-WCO

4.  Name of judge assigned to case: William C O'Kelley

5.  Disposition
    (for example, was the case dismissed? appealed? is it still pending?):

    Dismissed, Appealed, Dismissed

6.  Approximate date of filing lawsuit: January 29, 1996

*e*

7. Approximate date of disposition: _December 22, 1997_

8. Were you allowed to proceed *in forma pauperis* (without prepayment of fees)?  Yes _X_   No_____

C. As to any lawsuit filed in federal court where you were allowed to proceed *in forma pauperis*, was any suit dismissed on the ground that it was frivolous, malicious, or failed to state a claim?  Yes _X_   No_____

1. If your answer to C is yes, name the court and docket number for each case:

| | |
|---|---|
| Southern District of Georgia Statesboro | MC-696-086 |
| Southern District of Georgia Statesboro | 696-CV-123 |
| Northern District of Georgia Atlanta | 1:94-CV-577-RCF |
| Northern District of Georgia Gainesville | 2:94-CV-152-WCO |
| Southern District of Georgia Statesboro | CV 695-181 |

II. Place of present confinement: _Georgia State Prison, Reidsville, Georgia_

A. Is there a prisoner grievance procedure in this institution?  Yes _X_   No_____

B. Did you present the facts relating to your complaint to the appropriate grievance committee?  Yes _X_   No_____

C. If your answer to B is yes:

1. What steps did you take? _Filed institution grievance with Georgia State Prison (hereinafter G.S.P._

2. What was the result? _Relief denied; based on exam was not completed because I became argumentative with physician and Prevacid was discontinued and Tagament 800 milligrams prescribed._

𝟽

3. Did you appeal any adverse decision to the highest level possible in the administrative procedure?                 Yes **X**   No_____

If yes, what was the result? _Relief denied, based on failed to substantiate allegation of inadequate medical care. For medical complaints Regarding stomach, Medication change from Prevacid to Tagamet, Galuscon, Mylanta, And Maalox And plan of care._

D. If you did not utilize the prison grievance procedure, explain why not: _____
_____
_____
_____

## IV.   Parties

(In Item A below, list your name as plaintiff and current address. Provide the name and address of any additional plaintiffs on an attached sheet.)

A. Name of plaintiff: _Jimmy Rogers_
Address: _Georgia State Prison_
_100 Georgia Highway 147_
_Reidsville, Georgia  30499_

(In Item B below, list the defendant's full name, position, place of employment, and current address. Provide the same information for any additional defendants in Item C below.)

B. Name of defendant: _Adewunmi Sobwale_
Position: _Medical Doctor_
Place of employment: _Georgia State Prison_
Current Address: _200 Georgia Highway 147_
_Reidsville, Georgia  30499_

C. Additional defendants: _Thomas Lowry, Medical Doctor; Georgia State Prison, 200 Georgia Highway 147, Reidsville, Georgia 30499, Christine Jiminez, Physician Assistant; 200 Georgia Highway 147; Georgia State Prison Reidsville, Georgia; Dr. Duvne, Medical Doctor, Georgia State Prison 200 Georgia Highway 147, Reidsville, Georgia, Lisa Johnson, Medical Director; Georgia State Prison, 200 Georgia Highway 147, Reidsville, Georgia, 30499 (See Next Page)_

DEFENDANT'S NAME, Position, And place of Employment:

SANDRA MOORE
WARDEN OF CARE AND TREATMENT
Georgia State Prison
200 Georgia Highway 147
Reidsville Georgia 30499
Georgia State Prison Health Care Provider
Address unknown At this time.

Johnny Sikes
Regional Director
Georgia State Prison
200 Georgia Highway 147
Reidsville, Georgia   30499

Huge Smith
WARDEN
Georgia State Prison
200 GA Hwy 147
Reidsville, Georgia   30499

Jim Wetherington
Commissioner
Georgia Department of Corrections
#2 M.L.K. Jr., Dr., S.E., East Tower
Atlanta, Georgia   30304

VISON SMITH
B-UNIT MANAGER
Georgia State Prison
200 Georgia Highway 147
Reidsville, Georgia
                          30499

Roy BARNES
GOVERNOR Of the State Of
Georgia
214 State Capital
Atlanta, GA.   30.304

John Does And Jane Does,
  Names and Address unknown At this time.

-6-

V.    Statement of Claim

State here as briefly as possible the FACTS in your case. Describe how each
defendant is personally involved in the depriving you of your rights. You must
include relevant times, dates, places, and names of witnesses. DO NOT GIVE
LEGAL ARGUMENTS OR CITE ANY CASES OR STATUTES. If you intend to
allege a number of related claims, number and set forth each claim in a separate
paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. Jimmy Rogers, Plaintiff, is a state prisoner housed at Georgia
2. State Prison, Reidsville (Tattnall County) Georgia. The plaintiff
3. bring forth this 1983 civil action against several medical
4. doctors, Physician Assistant(s), Prison Officials, Health Care Pro-
5. vider and Georgia State Governor who are the defendant(s).
6. The Plaintiff having suffer with stomach problems for
7. several years, heartburn, acid reflux, gas and ulcer.
8. Plaintiff having been seen over a period of years by prison
9. doctor(s) and physician assistant(s) about the problems,
10. and have filed several institution grievances about his
11. health problems, medications and the changing of medica-
12. tion,
13. On about November, 2000 plaintiff was transferred from
14. Georgia State Prison to Augusta State Medical Prison to
15. consult with a gastroenterologist about his medical pro-
16. blems with heartburn, acid reflux and gas built up in
17. his chest cavity. Plaintiff having explained in details of
18. his health problems and food items he eats to the gastro-
19. enterologist. After this consultation plaintiff was prescribed
20. Prevacid and the gastroenterologist set a date for an
21. endoscopic examination and stomach swab and returned
22. to Georgia State Prison, on plaintiff return, Dr. Lowry pre-
23. scribed him Prevacid as recommended by the gastroenter-

(SEE Next Page)

24. ologist.

25. On About January 21, 2001, Plaintiff was transferred to Augusta State

26. Medical Prison for a endoscopic examination and stomach swab, upon

27. the examination the gastroenterologist discovered that plaintiff had a

28. ariled diaphragm (sic) and gave plaintiff a stomach swab, and his finding

29. was placed in plaintiff's prison health records.

30. Plaintiff was returned to Georgia State Prison on About Feb-

31. ruary 1, 2001. Plaintiff prescription of prevacid prescribed by Dr.

32. Lowry ended About April 20, 2001, before the prescription run out

33. plaintiff went to sick call to renew the medication of prevacid.

34. Without any examination Dr. Dunne prescribed one (1) thirty

35. (30) days supply of prevacid that end on May 13, 2001.

36. At the end of this prescription by Dr. Dunne, Plaintiff went

37. to sick-call on About May 10, 2001. On About May 11, 2001 plaintiff

38. was prescribed the medication of cimetidine tablets four hundred

39. (400) milligram to be taken one tablet at bedtime daily by Dr.

40. Sobowale without any examination or consultation with plaintiff.

41. On About May 12, 2001 plaintiff submitted a sick-call request and was

42. seen by Physician Assistant Paul S. explaining that cimetidine tablets

43. And the food he had to eat cause him heartburns, Reflux and gas built

44. up in the chest cavity after he eat the morning and evening meals,

45. And explain he had been on cimetidine tablets before, taking two (2)

46. tablets a day which gave little Relief or no Relief at all and how

47. much he would have to take of the medication of cimetidine tablet

48. On About May 16, plaintiff again went to sick-call for Reflux and heart-

49. burn, explaining the cimetidine tablets and the food, he was having

50. Reflux and heartburn that last up to About four (4) hours in the

51. morning and same after eating his evening meals, Plaintiff was

52. told by Physician Assistant Paul S. the change of Medication was

53. done by Dr. Sobowale. Plaintiff Requested to see Dr. Sobowale about

54. the change in the medication from prevacid to cimetidine tablets,

55. And plaintiff was refer to see Dr. Sobowale.

56. On About May 17, 2001, plaintiff met with Dr. Sobowale, Asking him

57. why he has changed the prescribed medication of prevacid to

58. cimetidine tablets that give him little Relief from heartburn, gas

59. And Reflux. Plaintiff explained that he could not eat a number of

60. food items served without having heartburn, gas built up in

61. his chest cavity. That in eating some food items he would have

62. to take up to six (6) or eight (8) cimetidine tablets in a four (4)

63. hour time period.
64.    Dr. Sobowale explained to plaintiff that prevacid was no longer
65. given to him because he was put on it for three months and no
66. longer. Dr. Sobowale further stated that prevacid was given only
67. to people that had the problem with their pancras producing
68. excessive Acid.
69.    Plaintiff further explained that on cimetidine tablets, antacids
70. and other medications that was given to him in the past. It was
71. difficult to eat the food items served. Explaining that he could not
72. eat such food as eggs, creamed beef and pork, baked and BBQ
73. chicken, dry beans and peas, margarine and meat that had
74. grease or cooked in grease and some food items he must advoid
75. or/and if eating cause heartburn and gas on taking prevacid.
76.    Dr. Sobowale look and reviewed plaintiff medicial medical records
77. of his history of his stomach problems finding that at one time
78. he had a bacteria in his stomach and system. (Plaintiff was told
79. by Physician Assistant Burk it come from using to much antacids).
80. And Dr. Sobowale stated this was the problem.
81.    But also look at the gastroenterologist finding and notice plaintiff
82. was giving a stomach swab which showed no bacteria, further
83. Noticed the gastroenterlogist found plaintiff to have a ariled
84. diaphragm(sic)  Dr. Sobowale explained this was a hy-hernia (sic)
85. or high-hernia(sic) and stated plaintiff would not receive pre-
86. vacid.

—————————————————

Plaintiff filed a institution grivance complainting about the change
of medication.
   On about May 21, 2001, Plaintiff filed his institution grievance
About the change of medication and his health condition. And
while his grivance was pending plaintiff returned to sick-call
About May 30, 2001 again complaining of heartburn, reflux and
gas. On May 30, 2001 Dr. Lowry prescribed Maalox Plus suspension
five (5) ounces to be taken two(2) tablespoonfuls if needed.

On About June 11, 2001 plaintiff went to sick-call for heartburn, reflux And gas on June 13, 2001, Dr. Sobowale prescribed Antacid MG/AL/SIM twevle (12) ounces (3-Bottles). to be taken; Use as directed, And cimetidine tablets four hundred (400) milligram. To be taken one tablet twice a day. Which on about May 26, or 29 plaintiff had been to sick call And complaining that one tablet a day was insufficient to control his Reflux, heartburn And gas built up in chest cavity that occurred after he eat the morning and evening meals further explain that he had to take extra cimetidine tablet up to about eight at time And having to take extra Antacid.

On About July 3, 2001 plaintiff was prescribed cimetidine tablets four hundred (400) milligram to be taken one tablet twice a day. On July 18, 2001 plaintiff Returned to sick call for gas, heartburn And acid Reflux explaining the cimetidine tablets only stop the heartburn for about forty (40) minutes and it start back and he had to take Another tablet over and over until it stop, or had to keep taking the Antacid MG/AL/SIM,

On July 20, 2001 Dr. Sobowale prescribed another bottle of Antacid; And same was prescribed on July 30, 2001 with cimetidine tablets And August 7, 2001 was given Antacid Also on August 22, 2001 cimetidine tablets was prescribed by Dr. Sobowale.

_____

On About June 28, 2001 plaintiff's grievance was answer the Warden Smith's Response stated:
" An investigation Revealed that your exam was not completed because you became argumentative when the physician began to explain the medication. Prevacid was discontinued And Tagament 800 milligrams was prescribed. You do not have A pending consultation at this time. I do not feel that further action is warranted at this time," (See Attached Exhibit - A)
Plaintiff appeal the warden's Response to the next level

that of the commissioner's office.

While plaintiffs' grievance was on appeal, he went to sickcall on July 17, 2001; August 20, 2001; September 12, 2001 for heartburn, gas builtup in cavity of chest and reflux. At sick calls plaintiff explain to physician Assistant Paul S. that the medication of cimetidine was not controling his symptoms, and same with taking Antacid MG/AL/SIM of each he would have to take over the recommended dose that is prescribed to control his heartburns, gas And Reflux, in which Dr. Sobowale had prescribed.

On September 13, 2001 plaintiff received the grievance response from his appeal to the commissioner's office, which stated: "Your grievance has been investigated by a member of my staff. This investigation has failed to substantiate your allegation of inadequate medical care for your medical complaints regarding your stomach. A review of your medical file revaled your medical complaints have been addressed and/or referred to the appropriate staff. Further review of your medical file reverted that the medication, PREVACID, was recommended for thirty days in January 2001 by the M.D at A.S.M.P. Medical documentation revealed in May 2001, DR. Sobowale noted the findings of the E.G.D. test preformed at A.S.M.P. along with your medical complaint of gas in the stomach at which time he noted the medication changed from PREVACID to Tagamet; Gaviscon, Mylanta, and Maalox have also been issued and you have been advised of your plan of care.

There is no evidence of inadequate or denied medical care for your medical complaints. This grievance has been reviewed by the G.D.C. Health Services Clinical Team and it was felt that this case was handled both adequately and appropriately. Based on these facts, no further action is warranted concerning this grievance.

After plaintiff received the appeal response on his grievance. On September 21, 2001. Dr. Sobowale prescribed plaintiff metoclopramide tablets ten (10) milligram to be taken one tablet four (4) times a day (after meals and at bedtime) without any examination or consultation with plaintiff.

Plaintiff went to sick call for gas, reflux and heartburn on September 24, 2001 and requesting why medication was change to Reglan (Metoclopramide) when he has a faulty value or hy-hernia (sic). At sick call plaintiff explained to Physician Assistant Paul S. that the Reglan did not stop his heartburn, gas and reflux and that it had been given to him in the past and the medication did not help. On September 26, 2001, Dr. Sobowale prescribed plaintiff Gennton Tablet Chew, Antacid tablets.

On the 25th of September 2001 plaintiff went to sick call and informed Physician Assistant Paul S. that he had taken the metoclopramide and had vomit the next morning after the morning meal in which he had became sick and informed his Dormitory Officer, Mr. Dawes Badge Number 1610 and Sergeant McNeal, plaintiff was given Maalox and having to take so much Maalox to stop his heartburn he informed Physician Assistant Paul S. it gave him diarrhea.

On about September 27, 2001 plaintiff at meal times inform the officers in the dininghall because of the heartburn, gas and reflux he have after eating breakfast and even meals that he is not refusing to eat but will not take a tray with food items on it that cause him to have heartburn, gas and reflux. Plaintiff having informed Sergeants Sanders, Cummingham, McNeal, Officers Boykin, Jones, Butler, Gillis, Easton, Patterson, Goode and Sergeants Ellis. The officers would order the inmate servers not to put the food items on plaintiff's tray that would give him heartburn, gas or reflux. Plaintiff was left with little to eat at breakfast and evening meals between

About September 27, 2001 to November 16, 2001. (See Plaintiff's Exhibit-C All Food items marked that plaintiff could not eat.) Plaintiff was having the choice to eat food that cause heartburn, gas and Reflux or be hungey. from not Receiving sufficient Amount of food At meals, or a sufficient deit, and the lost of weigh.

---

On about September 28, 2001 plaintiff filed An Administration Action before Warden Smith and Commissioner Wethering stating that he could not eat the food served and name each items, and on or taken prevacid he did not have the problems with gas, heartburn and Reflux, when he eats the food items. Further, Plaintiff stated that the medication Dr. Sobowale and Lowry was and is prescribed grue little or no Relief to his health problems. The Warden's Responded stated ;
If you wish to initiate a grievance, you must turn your grievance into your counselor. (See Exhibit-D)
Plaintiff had exhausted the grievance procedures of the corrections departmenton the matter As well As others.
After the wardens Response plaintiff file the Administration Action with the commissioner and received no Respond.

---

On about September 26, 2001 plaintiff went to sick call and Dr. Sobowale prescribed Genaton Tablet Chew to be taken, chew two to three tablets three times a day. When plaintiff Ate the food served (See Attached Exhibit-C) he would get heartburn, gas and Reflux. The symptoms would last up to four (4) hours plaintiff would have to take About eight tablets After his morning and evening meal. Plaintiff informed the officers to Remove food items from his tray that cause him to suffer the symptoms or he would not take the tray with the food items on it. (See Exhibit-C). On about October 11, 2001 Plaintiff went to sick call for heartburn, gas and Reflux And

informed Physician Assistant Paul S. that all food that cause him heart-burns, gas and reflux he was having the officers remove it or not put it on his tray and Physician Assistant Paul S. ask plaintiff what he wanted. Plaintiff stated that he can not get the medication Prevacid to eat the food that antacid tablet would do because he not eating any food that cause him severe symptoms of heartburn, gas or reflux. Plaintiff was given Calcium Antacid Tablets by Physician Assistant Paul S. and on about the 15th of November of 2001 plaintiff went to sick call for acid reflux. Nurse Brown (Sheron Brown or Howard) ask plaintiff what did he want for the symptoms. Plaintiff stated all he been getting is antacid tablets. Ms. Brown or Howard looked into plaintiff health records and stated you got Prevacid on about November 6, 2001. Plaintiff stated he had not received Prevacid since six or seven months that Dr. Sobowale had stop given him that medication. The Nurse said she will have them ordered, on November 16, 2001 plaintiff was prescribed Prevacid by Dr. Sobowale.

---

On about April 26, 1999, Time and the newpaper carried a article that was published in the New England Journal of Medicine. The Article carried the study that links heartburn to cancer, (see Exhibits E and F)

Plaintiff condition as stated by the gastroenterologist at August State Medical Prison is named or called arileldiaphragm, Dr. Sobowale and Physician Assistant Jimenez call it a (hy-hi) hernia.

Plaintiff condition is known as gastroesophageal reflux disease, or Gerd. Which is a faulty valve of the esophageal sphincter a ring of muscle that guards the entrance to the stomach and prevent the stomach acid from entering the esophagus.

These Articles states: Doctors suspect that over time the irritating acid causes cellular changes in the esophagus that can lead to the

most deadly form of esophageal cancer, adenocarcinoma.

People who suffer frequent heartburn and acid reflux run a higher risk of developing cancer of the esophagus, .....

The study found the risk of cancer was almost eight times higher among people who suffered heartburn, regurgitation or both at least once a week. Acid reflux at night was associated with a risk nearly 11 times higher. The overall risk of developing esophageal cancer is extremely low. While up to one-fifth of Americans get heartburn, only about 12,500 people a year develop esophageal cancer.... (See Exhibit - F) (Also see Exhibit-E)..... Repeated acid bath can alter esophageal cells, creating a condition known as Barrett's esophagus. Once that happens, the cells can become precancerous, then malignant.

.... with almost daily heartburn, the overall risk of esophageal cancer.....-is a horrifying 43 times greater than average.

Dr Robert Mzirowitz states: Gerd is usually not serious. Only about 5% of sufferers get Barrett's esophagus, and only 5% of those go on to develop cancer.

..... I've gone on a so called proton -pump inhibitor, a new kind of prescription drug that cuts down on acid production. And the article talk of a diet.

———————————

On about June 12, 1995 plaintiff request to be put on the bland diet this was no longer part of the State diets. (See Exhibit-G). Plaintiff is severed prespiced, greasy foods and fatty foods.

———————————

., Sufferers with severe symptoms should be watched care-fully by their doctors for signs of cancer. (See Exhibit-F)

And plaintiff can not over eat at meal times. His morning and evening meals, plaintiff having to eat about one half of the meals and with no supplement provided, that plaintiff having to eat less then other inmates, that is provided snacks or do not having these symptoms resulting in longer hunger period for plaintiff and plaintiff is not on the chronic clinic.

-15-

Plaintiff have had a history of stomach problems since about 1995, ulcer (see Exhibit-G) and after complained about gas, heartburn and reflux. Plaintiff was given X-Ray in about 1998 and found to have a (hi-hy) hernia and informed by Physician Assistant Jimenez that the hernia would be there for the rest of his life. And plaintiff have been give Prevacid and taking off Prevacid. Dr. Sobowale, Dr. Lowry, Dr. Dunne only issue plaintiff a three (3) month prescription, and prescribed various types of medications for six to eight months even when plaintiff return to sick call and complaints about the medications give little or no relief, even after the X-Ray showed plaintiff to have a faulty value in the esophageal sphincter (which is called a (hy-hi) hernia by the medical staff at Georgia State Prison.

A defendant in this case past away on about September 5, 2001, Dr. Lowry will no longer be a defendant but the facts that he treated and prescribed medications for plaintiffs' reflux, gas and heartburn will be part of the case.

Defendant Roy Barns, Governor of Georgia, announce a budget cut to the state's department heads, and prison officials in their cutback included health care. Defendant Barns failed to give or direct prison officials in their cutback to meet his budget cut. Prison officials in their cutback on their budget cut medical health care to plaintiff that he can only be provided medication to control his heartburn, gas, and reflux disease only three months out of a year. Then plaintiff is provided various types of medications that give little or no relief for his condition. Defendant Barns should have knew or known plaintiffs' have the condition known as Gerd (gastroesophageal reflux disease.) A condition that is control by the medication(s) Prevacid, Prilosec and diet. Under his budget cut plaintiff suffer (ed) heartburn, gas and reflux.

Defendant BARNS should have knew or known that his budget cut would cut the budget for plaintiff HEALTH CARE.

Defendant GEORGIA STATE PRISON HEALTH CARE PROVIDER is to provide Adequate health care to GEORGIA'S PRISONERS and under the budget cut fail to give plaintiff adequate health care for his health condition of gastroesophageal Reflux disease. A condition that is control by the medication(s) PREVACID, PRILOSEC and see that plaintiff Recerve a diet. Defendant GEORGIA STATE PRISON HEALTH CARE PROVIDER under Defendant BARNS budget cut and contract can only provide plaintiff with PREVACID or PRILOSEC for three(3) months out of a year. Then provide Plaintiff with other VARIOUS types of medications for NINE(9) months that give little or no Relief at all in which plaintiff is left to suffer heartburn, gas and Reflux and is not provided a diet.

Defendant Jim Wetherington, Commissioner of GEORGIA Department of Corrections having Received the Announcement of the budget cut to cut his department budget by about Five (5) per cent. Defendant Wethering ordered All his department heads to cut their budget And fail to give or direct prison officials in their cutback to bring the budget down in their department. Prison officials in their cutback on their budget cut medical health care to plaintiff that he is provide PREVACID or PRILOSEC only about three(3) months out of a year. Prison officials provide plaintiff with VARIOUS types of medication for about NINE(9) months that give him little or no Relief for his condition. Defendant Wethering should have known or knew about gastroesophageal Reflux disease and the medication(s) and diet to control the disease A disease plaintiff have and suffer with under Defendant Wethering budget, and fail to intervene when the medication, PREVACID was not provided to plaintiff.

Defendant Johnny Sikes. Regional Director received the announcement of the budget cut of about five (5) percent issued by Defendant Barns. Therefore issued to all prison wardens to cut their budget by about five (5) percent in his Region and fail to give or direct the prison wardens in their cutback on their budget. Defendant Sikes knew or known about gastroesophageal reflux disease a disease that plaintiff have. Without any direction from Defendant Sikes, Prison Officials in their cutback on the budget cut medical health care to plaintiff that he is provided Prevacid or Prilosec only three (3) months out of a year and given various types of medication for about nine (9) months that give him little or no relief for his condition.

Defendant Sikes should have knew or known about gastroesophageal reflux disease, the medication(s) and diet to control the disease.

---

Defendant Sandra Moore, Warden of Care and Treatment knew or should have known of or about gastroesophageal reflux disease. A disease that plaintiff have. Defendant Moore fail to intervene when plaintiff was not provided the medication to control his disease. Defendant Moore should have known or knew that the budget cut was not a reason not to provide plaintiff the medication(s) Prevacid or Prilosec for three (3) months to control plaintiff's disease. After the three months plaintiff be given other various types of medications for about nine (9) months that gave little or no relief for his heartburns, gas and reflux and no diet. Defendant Moore should have known and/or knew about gastroesophageal reflux disease and the medication(s) and diet to control the disease.

---

Defendant Lisa Johnson, Medical Director knew or should have known of gastroesophageal reflux disease a disease that plaintiff have. Defendant Johnson fail to intervene when plaintiff was not provided the medication to control his disease. Defendant Johnson should have knew or known that the budget cut was not a reason not to provide plaintiff the medication(s) Prevacid or

Prilosec and a diet to control his disease. Defendant Johnson fail to intervene when plaintiff was provide various types of medications for about nine (9) months that gave little or no relief for plaintiff disease. Plaintiff was given Prevacid for only three (3) months to control his disease. Defendant Johnson should have knew or known that plaintiff suffered heartburns, gas and reflux and received no diet to control his condition.

Defendants(s) Sobowale, Jiminez, Dunne, Johnson should know or have information that plaintiff have a faulty valve in his lower esophageal sphincter, which called gastroesophageal reflux disease, or GERD. A condition that is treated by proper medication and diet. Plaintiffs condition will not change as long as he live. The defendants(s) only provide the medication Prevacid for three (3) months at a time and after each three months when or before the prescription end plaintiff have to sign up for sick-call to request the same medication that he need or will need for his disease.

The defendants known that plaintiff will have to take the medication each day for the rest of his life, plaintiff on returning to renew the prescription for Prevacid after the three months is met with frustration and harassment also lies, other inmates that have long term illness who have continued to receive their medication without being subjected to having to go back to sick-call every three months or met with frustration, harassment and lies. The Defendants(s) Sobowale, Jiminez, Dunne, Johnson subject plaintiff to frustration, harassment and lies to discourage plaintiff from seeking medical treatment for his disease, and other inmates are placed on what is know as a chronic list that allow the inmates to see a doctor(s) periodic about their illness or disease without going to sick-call and subjected to a possible five (5) dollar charge as plaintiff.

Defendant Jim Wetherington Commissioner of Georgia Department of Correc-
tions having a Rule that the wardens or his appointed designee to
hold an inspection each day Monday through Friday. Plaintiff is
Require to be inspection ready between 8:00 a.m. until 4:30 p.m. Monday
through Friday. This mean that plaintiff can not work on preparing
any of his legal actions or legal briefs because Defendant(s)
Auge Smith and Johnny Sikes and their designee(s) appointed to
do the inspection, Require plaintiff from 8:00 a.m. to 4:30 p.m.
to have his legal materials stored in his assigned locker box pre-
venting and forbid plaintiff to do any legal preparation doing the
hours of 8:00 a.m. to 4:30 p.m. (See Exhibit-B)

   Plaintiff filed a institutional grievance that the requirement interfer and
hinder his ability to prepare a timely motion, habers and same with
civil action and requested that during inspections and tour groups
that legal material that is being used to prepare legal action(s) and
pleading (that is transcript(s)), paper, carbon paper, book(s) and document
(s) be placed neatly arranged on the shelf that is under the locker box
at the time of inspection and touring visitors. But at the same time
the Defendant(s) and their appointed designee(s) allows inmates that work
at nights to be in their beds except during a once a month Repeival inspec-
tion and allow inmates to store their radio and want coat foll up on the
shelf doing their inspection. Plaintiff filed this grievance about May 5, 2000.
The Wardens Response on May 15, 2000.
Inmates should be ready for any type of inspection between 8:00 a.m.
and 4:30 p.m. Time is allowed to work on legal briefs after these hours
if needed, Library time is scheduled for inmates as well to utilize the law
library. I do not feel that further action is warranted in this matter.
   Plaintiff appeal, the Commissioner's Response June 6, 2000.
Your grievance has been investigated by a member of my staff. This investigation
had failed to substantiate your allegations of morning inspection and touring
visitors interfering with your ability to research and prepare your
legal work.
The investigation revealed all prisoners are advised to be inspection ready
Monday through Friday from 8:00 a.m. until 4:30 p.m. This investigation
revealed there are no tours conducted before or after these designat-
ed times. You have provided no evidence to substantiate your legal
work has been affected by the daily operations and tours conducted
at Georgia State Prison. Based on this information, this grievance
is denied.

After Plaintiff filed the grievance Defendant Vison Smith was inspecting B-2 Cellhouse Upon inspecting plaintiff's cell found him to have legal materials (that is Paper, carbon Paper, pen and transcripts Also A dictionary) neatly Arranged on the shelf (under the locker box) At the end, away from underneath the locker box on About January 2002. Upon seeing the legal materials. Defendant Vison Smith ordered plaintiff to put it in his locker box. Plaintiff explained he was using the legal materials in preparing his state habeas corpus. Defendant Vison Smith ordered plaintiff to go inside his Assigned cell and put the legal material in the locker box And ordered plaintiff to leave it there until 4:30 p.m. And stay inspection ready until 4:30 p.m. on About January 2002.

When the defendant(s) or their Appointed designee, during An inspection or during a tour group, And enter plaintiff's Assigned cellblock And/or warden(s) And unit manager enter the cellblock And not inspecting during the day After An inspection between 8:00 A.m. And 4:30 p.m. And found to have his legal materials out or storing his legal materials. Plaintiff is met with harrassment, locked down in the cell And/or given A disciplinary report by defendant(s).

Monday through Friday the announcement is made to get ready for inspection At About 8:00 A.m. the inspection team may or may not Arrive At Plaintiff's Assigned cellhouse, when the inspection team do Arrive which may be At 8:30, 10:00, 11:00 A.m. And As late As 1:00, 2:00, or 3:30 p.m. to do An inspection. Further the Defendant(s) may hold inspection twice A day And A touring group(s). If plaintiff Attemp to do his legal work in Anticipating of An inspection or touring group And not Able to be Ready At the time of their Arrival he is harassed, locked down or face A disciplinary report.

---

Plaintiff on About December 27, 2000 on Reissue of lamps that the Area use to write was to dim and Affected his eyes.

The warden's Response on About January 31, 2001. Lamps Are not Available At this time. You should contact the Unit Manager to Request A lamp when they Are Available, I do not feel that further Action is warranted in this matter. Plaintiff Appealed, And during the Appeal of his grievance.

Plaintiff Requested A lamp through the Unit Manager Vison Smith his Response was to see Sergeant McNeal. Mr. McNeal stated lamps was on order, And later Mr McNeal when Ask About the lamps, stated the company sent the wrong lamps. Plaintiff ended up getting one from Another inmate, And Requested Sergeant McNeal for A light bulb, his Response was there would be No more light bulbs. Plaintiff Received his Appeal And the Response was it was out of time, The cells have inAdequate lighting to do Reading

And writing, lights in the cells is at the front, facing the opposite wall having no place to write. Unless plaintiff rig up a place using the toilet and even sitting on the floor it is to low causing cramps or stiffness to various parts of the body, trying to have adequate lighting to do his writing and reading because of his bad eyes. Plaintiff having to prepare any legal papers, petitions or civil actions after 4:30 p.m. take away plaintiff's other activities (that is church services, library and recreation) and defendant(s) do not provide lamps or light bulbs for remaining lamps. Plaintiff having to read and write his legal work in a dim lited area in his assigned cell damaging or destroying his eye sight. Where defendant(s) having offices with plenty of lighting and a desk lamp. Plaintiff having to get a lamp and find a bulb the best way he can, some cost as much as two (2) dollar from inmates.

Furthermore, Plaintiff using the shelf at the back of the cell his own body cast a shadow and shield away the lighting (that is, it make the area more dimmer causing plaintiff even more harm to his eye sight.) Plaintiff do wear eyeglasses in which the defendant(s) have fail to furnish the right prescription for his eyes.

Further, Plaintiff a prisoner in general population having been to the lock down area, in the lock down area inmates there have adequate lighting. So adequate that their lights are equiped with a switch to dim the light. Defendant(s) is bring plaintiff to make a choice of staying in general population and harm his eye sight farther or voluntary lock down for better lighting for health reason his eyes.

The Defendant(s) is wanting to eliminate the problems with inmates making prison ovens, where the inmates get about six to eight light bulbs and rig them up in a small box, in which he makes, and use it to toast light bread and heat food to make sandwichs and sell to other inmates.

Defendant(s) Wetherington, Sikes and Smith Also V. Smith seek to eliminate the problems at the expense of damaging or destroying plaintiff eye sight by not furnishing lamp and light bulbs, or adequate lighting for plaintiff in his assigned cell to use while writing or reading in the area they have provided.

On about June 26, 1998, plaintiff request in a grievance that indigent request for correspondence materials be combined on one sheet of paper, allowing the inmates to order only what needed. That he would not end up with excessive materials he does not need, and Defendant(s) refused. In 2002 the defendant(s) did exactly what plaintiff had requested in 1998 after Defendant Barns required a budget cut.

Plaintiff in his regust on lamps was for Defendant(s) to have the lamps stationary on locker or cell wall using a fluorescent lamp, Dormitory officers is the only one that can change the bulbs and no bulbs be issued to any inmates.

Eliminating Defendant(s) problems with oven making by inmates, and if any bulb is removed the inmate is to be charged, and officer remove bulb from empty cells and put in central station.

-22-

Plaintiff on about October 25, 2001 went to the medical department at Georgia State Prison, there he was seen by Physician Assistance Jiminez to see if the medication he has been taken for toe nail fungus had cured the problem. Doctor Sobowale who had prescribed for three months. On seeing that the medication did not cure the toe nail fungus. Ms. Jiminez then stated the only thing we can do is send you to Augusta State Medical Prison, and have the toe nails removed for they want grow back (or have the toe nails removed and they want grow back) do you want that. Plaintiff said no. and no other medication was issued for the problem.

On about November 28, 2001 plaintiff filed a grievance stating that he have toe nail fungus that cause soreness, infection, deform grow and the nails fall off or having to be removed. That the medication he had taken for three months and there was no change in the toe nails.

Plaintiff advised prison official(s) that there was a medication for treating the nail fungus that is sold in stores called Fungus Cure and Request to receive the medication from family member or that Georgia State Prison Medical staff provide it to him to cure the fungus. (Exhibit - H)

On about December 28, 2001 warden's Response:

You are receiving treatment for your condition and you have been offered the option to remove your toenail. Medication cannot be sent in by family to treat any condition. I do not feel that further action is warranted at this time.

Plaintiff appealed to the Commissioner office. On about March 18, 2002 the commissioner response:

Your grievance has been investigated by a member of my staff. This investigation revealed that your complaint of being denied adequate medical treatment for toenail fungus has been reviewed by the G.D.C. Health Services Clinical Team and it is felt that you have received adequate and appropriate treatment. Based on this information, no further action will be taken in this matter. This grievance is denied.

Plaintiff have toenail fungus that cause his toenails to grow defor thick, bad odor, soreness causing pain and get infected that they fall or have to be removed. Doctor Sobowale put plaintiff on medication three months that failed to cure the fungus. After filing his grievan Plaintiff received no treatment and after answers plaintiff returned to sick call and was prescribed the same medicatio that fail to cure the fungus.

## FIRST CAUSE OF ACTION

Plaintiff having for years suffered with heartburn, gas and reflux a condition known as gastroesophageal reflux disease. A disease that can lead to a dead-ly form of esophageal cancer, if not control by treatment and diet. After plaintiff had been examined by a gastroenterologist at Augusta State Medical Prison and it was affirmed that plaintiff did suffered from gastroesophageal Reflux disease and to control his disease the gastroenterologist proscribed Pre-Vacid.

Eighth Amendment protection against deliberate indifference to prisoners health problems extends to conditions that threaten to cause health problems in future, as well as current serious health problems. U.S.C.A. Const. Amend. 8.

Plaintiff contends that before January 21, 2001, he had complained about having heartburn, gas and reflux on numerate occasions. Was examined by only Defendants Lowry, Jiminez and was given X-Rays knew that plaintiff had a (chi-hy) hernia, but later told by Defendant Jiminez his x-ray was negative and he did not have a (chi-hy) hernia. Plaintiff was prescribed several various types of medications that did not control his condition. From January 21, 2001, plaintiff was prescribed Prevacid by Defendant Lowry and Dunne that ended May 13, 2001. On about May 11, 2001 without any examination or consultion with plaintiff Defendant Sobowale prescribed the medication of cimetidine tablets, a medication that did not control plaintiff's condition in the past. Defendant Sobowale, Smith, Jiminez, Lowry, Dunne, Johnson, Moore, Wetherington, Sikes, Barnes and Georgia State Prison Health Care Provider was deliberate indifference to plaintiff health problem that can cause him serious health problems in the future if not given adequate treat-ment to control the reflux, gas, and heartburns. From about May 13, 2001 plaintiff was prescribed various types of medications that gave little or no relief, plaintiff suffered with heartburns, gas and reflux or all from once a day to 3 or 4 time a day some last up to 4 or 5 hours until November 16, 2001 that could or may have damage plaintiff's esophageal setting the stage for cancer.

## SECOND CAUSE OF ACTION

Plaintiff was prescribed Prevacid by a gastroenterologist a specialist in the study or research of gastroesophageal reflux disease a condition in which plaintiff have. Defendant Sobowale discontinued the medication of Prevacid without any examination or consulting with plaintiff or the gastroentero-logist. When Defendant Sobowale discontinued Prevacid knew or should

Known that plaintiff would suffer pain from heartburn, gas and reflux from his condition, without any diet free of grease, butter and spice would cause plaintiff stomach acid to rise into his esophagus causing pain, and he would have the choice of eating the food or not eating the food and the lost of weigh from not receiving sufficient amount of food.

The eighth Amendment's ban on inflicting cruel and unusual punishment by denying of medical treatment causing pain and suffering to prisoner. U.S. Const. 8.

Plaintiff contends that from about May 13, 2001 until November 16, 2001 he was prescribed medications that gave little or no relief and one medication that made him sick by Defendant Sobowale. Plaintiff return to sick-call several times and let it be known that the medication was not controling his symptoms. Defendant(s) Lowry, Jiminez, Dunne, Johnston, Moore, Sikes, Smith, Wetherington and Georgia State Prison Health Care Provider did not intervene when they knew, or should have known that without the medication prevent plaintiff would suffer from his condition.

Plaintiff was faced with the choice to eat the food or go hungry. After about September 22, 2001, plaintiff having suffered heartburn, gas, and reflux because of the medications defendant Sobowale was/is prescribing he had to stop eating food items by having the officers remove it off his tray or not put it on the tray, causing plaintiff to suffer discomfort, and pain caused by the lack of food and if eating causing pain from heartburns, gas, and reflux. Plaintiff also suffered the lost of weigh.

Defendant(s) not providing plaintiff a diet or medication so he can eat the food they provide deprive plaintiff of a sufficient amount of food causing pain and suffering constitute cruel and unusual punishment.

## THIRD CAUSE OF ACTION

Plaintiff having to read and write in a area in his assigned cell provided by Defendants Wetherington, Sikes, Smith and V. Smith, Also Barnes and Moore having in adequate lighting, so defendants provided lamps to use in the assigned cell. When the Defendant(s) Smith, V. Smith and others found or fined out that light bulds was being use to make small ovens by inmates. Defendant's stop issuing lamps and light bulds and plaintiff will and force to do his reading and writing in a dim lited area without adequate lighting.

Threaten to damage or destory plaintiff's eye sight

From the defendant(s) failure to provide adequate lighting in the area they provided in the cells for plaintiff to do his reading and writing.

Eight Amendment protection against deliberate indifference to prisoner health problems extends to conditions that threaten to cause health problems in future, as well as current serious health problems.

U.S.C.A. Const. Amend. 8.

Plaintiff contends that he do wear eye glasses because he have poor eye sight. Defendant(s) Wetherington, Sikes, Smith, V. Smith, Barns and Moore is further destroying and damaging plaintiff's eye sight by not providing adequate lighting in his assigned cell where he does his writing and reading away from the light in front of the cell in the area they have provided. Defendant(s) refuse to replace, bulbs and issue lamps to use in the area at the back of the cell and plaintiff having to write in and read in the area. Threaten to damage or destroy his future eye sight even more faster. Defendant(s) are deliberate indifference to plaintiff need for adequate lighting in the assigned cell.

## FOURTH CAUSE OF ACTION

Plaintiff having to be inspection ready from 8 o'clock a.m. to 4:30 o'clock p.m. Monday through Friday at which time Defendant(s) Wetherington, Sikes, Smith, and V. Smith forbid plaintiff to prepare any petitions, brief, pleading, motions, or civil action. When plaintiff is found to be doing or preparing his legal work by defendant(s) or designee who do the inspection or touring group Monday through Friday between 8 o'clock a.m. and 4:30 o'clock p.m. is harassed, locked in cell and or receive a disciplinary report. Defendant(s) do not provide lamps or light bulbs for remaining lamps to do reading and writing at night in the area they provides in cell.

Access of prisoners to court for purpose of presenting petitions for habeas corpus may not be denied or obstructed.

28 U.S.C.A. §§ 2241-2255, -2242.

Plaintiff contends that defendant(s) Wetherington, Sikes, Smith and V. Smith having a rule that is obstructing his ability to bring forth a writ of habeas corpus that forbid the working and preparing the case between 8 o'clock a.m. until 4:30 p.m. Monday through Friday and if caught may receive punishment of being lockdown in the cell or move to lockdown area, disciplinary report or be harassed by shakedowns and verbally abused. Plaintiff is also burden under such rule in presenting arguable legal claim, frustrated in presenting meritorious claims because he is being denied meaningful access to the courts by defendant(s) actions, furthermore - - - - - - - - -

-26-

the defendantes Rule that Monday through Friday After 4:30 p.m. he may have Religious
SERVICES, library (LAW), and other Activity Also deprive of sleep when or where
there is a court time limit on motions, pleading and briefs.

The SUPREME Court has held that A REGULATION violated the PRinciple that the state
and its officers may not abridge or impair petitioner's right to apply to A
Federal court for A writ of habeas corpus in Ex parte Hull, 312 U.S. 546. Defen-
dant(s) unreasonable Regulations on the time and location for plaintiff to
work on his petition and do legal work After 4:30 p.m. And at library
because of the increasing complexities of the governmental APPARATUS At
both the state and federal levels have made it difficult for plaintiff to
process A petition and civil action.

.... in the ABSENCE of A legitimate PENOLOGICAL or administrative REASON for
Restricting the Activities of A jailhouse lawyer, prison officials may not
interfere with such activities. Pell v. PROCUNIER, 417 U.S. 817. Here the
defendant is interfering with plaintiff activities to PREPARE his writ without
any PENOLOGICAL or Administrative REASON.

## FIFTH CAUSE OF ACTION

Plaintiff contends that he have A state created protected liberty interest under
the Board Rules of the Department of Correction of the state of Georgia that
Requires and allow him to prepare his briefs, petitions, motions, pleading, and
correspondence with court or legal counsel, without any Restriction or depriva-
tion that would creates A atypical and significant hardship that subject him
to conditions different from ordinary conditions of prison life.

Inmates shall be permitted legal materials (including, but not limited to, briefs,
petitions, motions, pleading, and correspondence and courts and legal counsel)
And to secure Assistance in the PREPARATION of such materials, providing
established procedures are observed ....
Board Rules and Regulations of the Department of
Corrections No. 125-2-4-.17.

All legal material should normally be prepared in the Assigned cell or dormi-
tory of the inmate whose legal interests are being pursued.
Board Rules and Regulations of the Department
of Corrections. No. 125-2-4-.17 (A).

Inmates may possess only specifically authorized quantities and

state issued property items. All personal and issued property shall also be limited to quantities which can be neatly and safely stored in the inmate's locker or storage area, so long as the property does not pose a fire, sanitation, security or housekeeping problem.

Georgia Department of Corrections, Standard Operating Procedures. No. II B06-0001 (1);

(1) Each Warden/Superintendent shall establish and maintain a program of regular inspections of all institutional facilities and equipment including, but not limited to, confinement facilities, dormitories, cellhouses, mess facilities, work shops, storage areas, recreational facilities, etc. Inspections shall encompass, security, safety, sanitation and appearance.... such regular inspections shall be augmented by frequent irregular and unannounced spot or special inspections to detect and correct deficiencies at the earliest possible time.

(2) As a minimum, the following inspections shall be made:

(A) At least weekly general inspections of the entire institution.

(b) At least once a day, on an irregular schedule, all cells, bars, locks, windows, security doors and other security facilities shall be thoroughly and carefully inspected to assure that they have not been tampered with and are in good condition. A written report of the inspection, including appropriate recommendations for correction of deficiencies discovered, will be submitted to the Warden/Superintendent by the inspector. The Warden/Superintendent will take whatever action is required to correct reported deficiencies in a timely manner. A copy of each of these report and record of corrective action shall be maintained in the institutional files for a period of not less than two (2) years and made available to the state Board of Corrections Inspection Service personnel during their visits to the institution.

Rules and Regulations of the Board of Corrections of the Georgia Department of Corrections. No. 125-3-1-.04 (1, 2, A, B).

State may under certain circumstances, by adopting prison regulations, create liberty interests which are protected by due process clause. U.S.C.A. Const. Amend. 14

Fed. Constitutional, West Key Law No. 272 (2).

State procedures may create liberty interests that are deprived when state actor deviates from these procedures, and which thus come within scope of protection of due process clause. U.S.C.A. Const. Amend. 14

Fed. Constitutional, West Key Law No. 254.1, 255 (1).

Plaintiff contends that Georgia Department of Corrections have Rules And Regulations pertaining to plaintiff personal APPEARANCE And sanitation of his Assigned cell And what sanctions to a disciplinary charge(s) he may RECEIVE for willfully violating such Rules And Regulations, In which will be Disciplinary Infraction Codes G 01. Unkempt Personal APPEARANCE; hair, clothes, sanitary, neat And odor-free As possible; G 02. Unkempt cell; odor-free, sanitary, free of trash And debris to the visual observation of a staff member; G 03. Growing or wearing Beard; growing or wearing of a beard, goatee, or otherwise not being clean shaven; except mustachs, which do not extend beyond the edge of the mouth And kept trimmed at all times. G 04. Growing or wearing sideburns; growing or wearing of thick or untrimmed side burns or sideburns extending below a point even with the bottom of the EAR lobe; G 05 wearing hair to long; growing or wearing of the hair on the head long enough to extend onto the collar of An ordinary shirt, cover Any part of the EARS or eyebrows, or to be longer than three (3) inches on top.....; G 06. wearing unauthorized jewelry; wearing on the person, body, or clothing of earrings, ornamental buckles, beads, pendants, medallions, or other items of decoration or jewelry...... Which the severity is a low security levels.

Under the Georgia Department of Corrections, standard Operating Procedures: if a staff member found plaintiff to be in violation of Any infraction codes pertaining to plaintiff APPEARANCE And/or sanitation he may be warn by staff member to correct the problem(s); or lock in his cell for two hours, given two hours extra duty After working hours. But, if plaintiff willfully refuse he may be given a disciplinary report And/or including failure to follow instructions Code C 15, which make the severity high, And the officer of inmate Discipline may if found guilty sanction disciplinary punishments. That will be store, phone And dormitory or cell restriction, And extra duty After working hours. However if the addition charges of failure to follow instructions Code C 15 And insubordination Code B 13 the severity level become high And plaintiff RECEIVE punishments of store, phone restriction, isolation or segregation.

Defendant Wetherington having mandated that all prison wardens and superintendents will hold An inspection of their respective institution or facility As provided And directed by the Board of Corrections Rules And Regulations. Defendant Wetherington having made such requirement failed to supervise the performance And procedures used by wardens And superintendents. Thus, allowing Defendant(s) Smith, Sikes And V. Smith or their appointed designee to use intimidation, threats, harassment And punishment(s) to force And force plaintiff to participate in Any type of inspection monday through Friday from 8 o'clock A.m. to 4:30 o'clock P.m. At which time plaintiff is forbidden to do Any type of legal work in preparing his habeas petition, Any

Civil Action, briefs, motions and pleading or use his trial transcript, research material and evidence in preparing his writ of habeas corpus. Defendant(s) further force plaintiff to stay inspection ready from 8 o'clock a.m. to 4:30 o'clock p.m. Monday through Friday and it mandatory that he pass the inspection which is consist at time of a shakedown during the inspection without any justification. Moreover, plaintiff is force to participate by presenting himself to Defendant Smith, Sikes, V. Smith, or their appointed designee in a standing position at his assigned cell door with his hand by his side and feet together in the form of attention and force to speak. Plaintiff failure to meet defendant(s) Smith, Sikes, V. Smith or their appointed designee's inspection he is subjected to verbally abuse, harassment by a shakedown, or his assigned cell being torn apart by defendant(s) by pulling everything out of the locker box and unfolding all cloths, towels and legal material throw on bed in disarray, and bed turning up also plaintiff is lock in cell from two (2) hours to all day.

Which Defendant Wetherington fail to prevent and is not a disciplinary sanction for failing an inspection allow defendant(s) to apply their own sanction of harassment, verbally abuse, intimidation, threats and punishment(s) in violation of Plaintiffs First, Fifth, Eighth and Fourteenth Amendments Rights of the United States Constitution, and the State of Georgia's Constitution.

Under the Board Rules and Regulations of the Georgia Department of Corrections and Georgia Department of Corrections, Standard Operating Procedures. Plaintiff have a state create liberty interests that is protected by due process clause of the Fourteenth Amendment, and when Defendant Wetherington required that all warden and superintendent inspect their institutional or facilities as required by the Board Rules and Regulations of the Georgia Department of Corrections. The defendant(s) have turn or move away from the specified course prescribed by the Board Rules and Regulations of the Georgia Department of Corrections and is not applying the inspection to the institution and it equipment but on plaintiff where he has a state create liberty that come within the scope of protection of due process clause not to be a partaker in the inspection.

Plaintiff specifically contends that the Board Rules and Regulations of the Georgia Department of Corrections states: A written report of the inspection, including appropriat recommendations for correction of deficiencies discovered, will be submitted to the Warden/Superintendent by the inspector. The Warden/Superintendent will take whatsoever action is required to correct reported defi-

ciencies in a timely manner. A copy of each of these report and record of correct-
ive action shall be maintained in the institutional files for a period of not
less than two (2) years and made available to the state Board of Corrections
Inspection Service personnel during their visits to the institution. Id. Rules and
Regulations of the Board of Corrections. No. 125-3-1-.04(6). The defendant(s)
Smith, V. Smith, Sikes and designee on inspections is to maintain a report of the
deficiencies found at the institution and it equipment when inspecting it is to
see whether or not there are safety, sanitation and appearance problems with
the building structure, materials and paint, and make sure that all equipment
is safe to operate and in good condition which also mean that the building
and equipment are kept clean by inmates and staff members. Thus the inspec-
tion is directed at the building and its equipment requiring a written report,
recommendations, correction, fix in a timely manner and placed in the
institutional records and available to the state Board of Corrections Inspec-
tion Service Personnel on their visits. Id. That it give plaintiff a state
procedures create liberty interests which is protected by due process
clause that he does not have to be inspected by defendant(s), nor does it
require plaintiff to preform any act or action that violates his rights.

Plaintiff have a create liberty interest which is protected by due process
clause when prison officials adopted rules and regulations pertaining to
plaintiff personal appearance, sanitation and safety and it violated
he is afforded due process protection. Defendant(s) Smith, V. Smith, Sikes
and their designee are giving plaintiff punishment, threats, intimidation,
and harassed without due process when they hold their inspection by
placing plaintiff in his cell for two hours or more for failure to present
himself to defendants in a standing position in the form of attention.
As there no requirement for defendants to inspect plaintiff personal
there is no requirement that plaintiff personal have to preform any
acts or action that violate his rights.

Defendant(s) inspections is held Monday through Friday from 8 o'clock to 4:30
p.m. and plaintiff is forced to participate in these inspections. The Rules
and Regulations of the Board of Corrections for the Georgia Department
of Corrections states for the defendant(s) to hold their inspection, at
least once a day, on an irregular schedule, all cells, bars, locks, windows,
security doors and other security facilities, shall be thoroughly and carefully
inspected to assure that they have not been tampered with and are in
good condition. Id. Such regular inspections shall be augmented by fre-
quent, irregular and unannounced spot or special inspections to
detect and correct deficiencies at the earliest possible time. Id.

During defendant(s) inspection and plaintiff is found to be in violation of

Any Rules or Regulations pertaining to Personal Appearance, sanitation, safety or security he is to be afforded due Process protection to identify each of the violations he is charged with so plaintiff can or may Rebuttal the accusation of unkempt cell or Personal Appearance which is at all time in the visual observation of a staff member. These Rules give plaintiff a create liberty interest which is protected by due Process, defendant(s) on their inspection on finding plaintiff not inspection Ready, punishment is given to plaintiff without due Process. Id.

Plaintiff have a state create liberty interest adopted by Prison Regulations which is protected by due Process that he is permitted legal material, Id. And all legal materials should normally be prepared in the assigned cell. Id. ... of the inmate whose legal interests are being pursued. Id. All Personal and issued property shall be limited to quantities which can be neatly and safely stored in the inmate's locker, so long as the property does not pose a fire, sanitation, security or housekeeping problem. Id.

Defendant(s) Smith, V. Smith, Sikes and their appointed designee forbid plaintiff from doing any legal work Monday through Friday from 8 o'clock A.m. to 4:30 p.m. because defendant(s) Requirement of plaintiff staying inspection Ready. Plaintiff have a state create liberty interests to prepare legal materials in and use legal materials in his cell without any interference or restriction that would deny plaintiff meaningful access to courts. During defendant(s) inspection, plaintiff preparing his habeas petition, civil action, pleading and motion this and his trial transcripts and record does not fall within the meaning of trash, debris or a unkempt cell in fact by the state Rule, it is plaintiff's working area or office to do his legal work to prepare his case(s). Defendant(s) Rule of being in inspection Ready for any type of inspection deny plaintiff meaningful access to courts. Where he have a state create liberty interests to have meaningful access to courts by prison Regulations that come within the scope of Protection of due Process.

Plaintiff finally contends that the Board Rules and Regulations direct the Warden to hold an inspection as a minimum, at least weekly general inspection of the entire institution, and at least once a day, on an irregular schedule, such Regular inspections shall be augmented by frequent irregular and unannounced spot or special inspections to detect and correct deficiencies at the earliest possible time. Regular inspections of all institutional facilities and equipment including, but not limited to

confinement facilities, dormitories, cellhouse, mess facilities, work shops, storage areas, recreational facilities, etc. Inspection shall encompass, security, safety, sanitation and appearance. Once a day, all cells, bars, locks, windows, security doors, and other security facilities shall be thoroughly and carefully inspected to assure that they have not been tampered with and are in good condition and a written report of the inspection, recommendations for correction of deficiencies discovered, be submitted to the warden by the inspector. The warden will take whatever action is required to correct reported deficiencies in a timely manner, a copy of each of these. Report and record of corrective action shall be maintained in the institutional files for two (2) years and made available to the state Board of Corrections Inspection Service Personal during their visits to the institution.Id.

This Rules and Regulations of the Board of Corrections of the Georgia Department of Corrections No. 125-3-1-.04 that mandates an inspection give plaintiff a state create liberty interests that he is not to be inspected by the defendant(s), the Rule not only mandates an inspection, but it mandates when, how, and what the defendant(s) is to inspect; all institutional facilities; meaning all departments in the institution that is/was created to serve a particular function to the institution, including, but not limited to the confinement, dormitories, cellhouse, mess and recreational facilities but also work shops and storage areas, etc. Plaintiff does not hold the head of any institutional department.

The Rule mandates to inspect all equipment in the institution and encompass security, safety, sanitation and appearance; as said before the building, its structure, and materials any deficiencies is to be reported, fix and such actions is to be placed in the institutional files for the state Board of Corrections Inspection Service Personal.

The Rule further mandates the warden to hold as a minimum, at least weekly general inspections of the entire institution, and in addition ally, such require inspections shall be augmented by frequent irregular and unannounced spot or special inspections to detect and correct deficiencies at the earliest possible time. Thus not directed at plaintiff to deny him meaningful access to courts or make any change in his activity only that of obstructing, interfering with or preventing any staff member from carrying out his/her orders, duties, or assignments. Disciplinary Infraction Codes No. B 17, during their inspection of cell.

Furthermore, the Rule mandates at least (as a minimum) once a day, on an irregular schedule, all cells, bars, locks, windows, security doors, and other security facilities shall be thoroughly and carefully inspected to assure that they have not been tampered with and are in good condition, and a written report of the inspection, recommendations, correction of deficiencies discovered.... to the warden.... by the inspector, warden will take whatever action is required to correct reported deficiencies in a timely manner. A copy of each of these report and record of corrective action shall be maintained in the institutional files..... and made available to the state Board of Corrections Inspection Service Personal.....

Thus, again the Rule mandates once a day on an irregular schedule that all cells (empty or not), bars, locks, windows, security doors, and other security facilities (all

department(s) created to serve security functions) shall be thoroughly and carefully inspected to assure that they have not been tampered with and are in good condition. Defendant(s) have turn or move away from this specified course as prescribed by the rule that have / hold mandatory language on who, what, when, where, and how the inspection is to be conducted and is not direction for defendant(s) to inspect plaintiff person or to have plaintiff to preform any acts) or action nor do plaint, ff have to participate in any type of inspections done by defendant(s). By the state adopting the rule created liberty interests that plaintiff is not to be inspected himself or receive any type of punishment for failing any type of inspection the his legal activities in his cell.

On May 16, 2002 (about that date) Defendant V. Smith with Sergeant Sanders and McNeal on entering cellblock B-2 for inspection about 10:15 a.m. found plaintiff to have, went to sick call (which Dormitory officer Robinson or Robertson had woke plaintiff at about 9:45 a.m. to go to sick call) and leaving his bed unmade and legal materials stacked at the end of the shelf. Defendant V. Smith with Sanders and McNeal enter plaintiff's assigned cell, and took all clothing, towels, and personal clothing and unfold each items including socks, throwing all of it onto the bed and legal materials from the locker box. When plaintiff return, Defendant V. Smith, with Sanders and McNeal ordered officer Robinson or Robertson to lock plaintiff in the cell for the rest of the day because the cell was dirty.

Plaintiff is provided created liberty interest by the state. Rule that he is not the subject of the inspection and the state afford him due process protection by other rules adopted by the state pertaining to plaintiff personal appearance and sanitation. Which are under Disciplinary Infraction Codes G, 01, 02, 03, 04, 05, 06, H.01, 'C, 15', 16, 17; S.O.P No. II B06-0001 (1). Plaintiff having search the Board's Rules and Regulations, Standard Operating and Local Operating Procedures found no standing rule for an inmate to be inspected or participate in any type of inspections, or disciplinary sanction or punishment for failing an inspection. Moreover, Plaint.ff found no rule on how inmates is to conduct themself or what is expected of an inmate doing an inspection.

Defendant(s) is using and applied harassment, intimidation, threats and punishment to force plaintiff to participate in a inspection or inspections where he have a state create liberty interest that come within the scope of the protection of due process clause. More that the Defendants) forbid plaintiff from doing any legal work in his cell from 8:00 o'clock A.M. to 4:30 p.m. Restricting plaintiffs legal activities because of their inspection ready rule for plaintiff. that do not have a legitimate penological or administrative interests. Defendant(s) making the inspection applicable to plaintiff violates his federal constitutional right under the 1st, 5th, 8th, and 14th Amendment also his statutory rights and the Georgia's Constitution.

> In instances where state Regulations applicable to inmates of prison facilities conflict with paramount Federal constitutional or statutory rights, the Regulations may be invalidated.
> Const. Law, Fed. West Key No. 4.

Defendant(s) Smith, V. Smith or their designee hold an inspection Monday through Friday applying it upon Plaintiff that he is unable to make arguable claims that have value and thus treated in presenting meritorious claims. Having apply a rule that under such certain circumstances come within

the scope of plaintiff protected due process right by the adopting of prison regulations that have created liberty interest which is/are protected by due process clause. Where the state have policies that afford plaintiff the right to meaningful access to courts, not part of the inspection and not to be inspected. Furthermore, there is no legitimate penological interest or an administrative interest for restricting plaintiff legal activities in his assigned cell by defendant(s) stay inspection ready rule for any type of inspection or inspecting inmates or their property.

## SIXTH CAUSE OF ACTION

Plaintiff contends that he have toenail fungus which cause soreness, pain, deformed grow, the toenails get infected, come or fall off or having to be removed. Having taking medication prescribed to him that failed to cure the fungus. Plaintiff requested the medication fungus cure and prison officials refuse to provide it or/and refuse to allow his family to send it to him, but want to remove the nails so that the nails want grow back.

Eighth Amendment protection against deliberate indifference to prisoner health problems extends to conditions that threaten to cause health problems in future, as well as current serious health problems. U.S.C.A. Const. Amend. 8.

Plaintiff contends that defendant(s) is deliberate indifference in providing him a medication that would cure the toenail fungus that can/may lead to infection that may cause the lost of his toes, foot or feet, leg or legs if an infection spread to other part of his body. Instead of defendant(s) providing the medication fungus cure to cure the fungus they is wanting the ultimate decision of removing the nails so they want grow back. Plaintiff is entitled to what is reasonable and is entitled to cure his toenail fungus without destroying all his toenails the last and ultimate decision. After grievance was given same medication that did not cure the fungus after taking it for three(3) months.

## ADDITION INFORMATION to Page 19.

On about May 12, 2002 filled out a sick call slip for the medication Prevacid and put in sick call box by the mess hall, was not seen. On about May 15, 2002 filled out another sick call and put in sick call box. Was seen on May 16, 2002 by P.A. (F.N.P. -C) M. Warner who informed plaintiff that "the state do not furnish Prevacid anymore I can give you Zantac." Plaintiff left. On about May 19, 2002 plaintiff fill out a sick call slip and gave it to officer Bradly Badge No. 2097 on about May 20, 2002 plaintiff received Zantac for his gas, heartburn and reflux that give little or no relief from his disease. On about May 28, after eating cornbread, greens, cream potato and applesauce, tea about 5:30 p.m. After about an hour gas, heartburn and reflux begin, and having taken a Zantac before the meal, the beef liver plaintiff did not eat. At about 7:00 o'clock p.m. plaintiff took another Zantac little relief came and the symptoms continued even as plaintiff took a Zantac at about 8, 9, o'clock p.m. After having taken four(4) Zantac pills plaintiff symptoms last up until 10:49 o'clock p.m. At that time plaintiff took a Prevacid pill at about 11:06 plaintiff had no symptoms of heartburn, gas or reflux.

Now plaintiff have three(3) Prevacid pill left in three(3) days plaintiff will have to eat less and avoid the food items that is served to control the symptoms by having the officer remove the food items off his tray or not put it on, and if on he does not eat it.

## RELIEF REQUESTED

1. Declare that the Defendant(s) cease inspecting plaintiff and forcing him to participate in any type of inspection.

2. Declare that the forcing of plaintiff or any inmate to present himself/themself in any form of Attention violates the Right of Freedom

3. Declare that the Defendant(s) can only hold their inspection in accordance with the instructions of the Georgia Department of Corrections, Rules And Regulations of the Board of Corrections No. 125-3-1-.04 (1),(2), (A),(B), And (3) that specific states institutional facilities And equipment where in A written Report on the deficiencies discovered And recommendations for correction is to be made by the inspector, And be available to the State Board of Corrections Inspection Service personel during their visits; And not sift their Responsibility upon plaintiff And inmates.

4. Declare that the Defendant(s) train correctional officers and institutional employees to to Report Any And All unusual conditions, events, deficiencies they may observe with any institutional facilities, equipment and operations within the institution.

5. Declare that the Defendant(s) inspection of plaintiff and inmates Rules And Regulations of staying inspection Ready for any type of inspection from 8:00 o'clock A.M. to 4:30 o'clock p.m. deny, obstruct, Abridge, impair, Restrict plaintiff And other inmates legal Activities, in violation of the United States Constitution, Georgia Constitution, federal And state laws, And is in conflict with the Georgia Department of Corrections, Rules And Regulations of the Board of Corrections Rule No. 125-2-4-.17 And 125-2-4-.17 (A) that provide preparation for Legal Materials for the inmate whose legal interests are being pursued. That give inmates meaningful access to courts. The Defendants inspection Rules that is appliable to plaintiff violate his Rights and in conflicts with the Board Rules And Regulations is invalid, As well with Federal and states laws.

6. Declare that plaintiff have a state created liberty interest which is protected by due process clause by the State adopting the Georgia Department of Corrections, Board of Corrections Rules And Regulations Rule No. 125-3-1-.04 that plaintiff And other inmates Are not to be inspected or participate in any type of inspection, And Rules No. 125-2-4-.17 And 125-2-4-.17 (A) that give A state created liberty interest to prepare his legal material And legal Activities in his cell without Any Restriction for meaningful Access to courts.

7. Declare that the Defendant cease all harassment, verbal Abuse, intimidation, threats and punishment without due process when the defendant(s) Are/is

inspecting all the institutional facilities and equipment, and not inmates, and plaintiff.

8. Declare that the Defendants have and is violating plaintiff Rights and other inmates by having and forcing him/them to participate in any type of inspection where there is no legitimate penological or administrative interest.

9. Declare that there is no penological or administrative interest in having plaintiff or any inmate stand or participate in any type of inspection and/or inspecting inmates.

10. Declare that the Defendant(s) are deliberate indifference to plaintiff serious health problems.

11. Declare that Defendant(s) is deliberate indifference in not providing the medication Prevacid and Nexium to plaintiff to control his acid reflux disease.

12. Declare that Defendant(s) shall provide plaintiff with Prevacid or Nexium to control his acid reflux disease without any thirty (30) days proscription and without any interferes, obstacles and denial with one check-up a year on plaintiff on his problem of gastroesophageal reflux disease for any change in his condition.

13. Declare that Defendant(s) is deliberate indifference in not following the recommendation of a specialist who had proscribed Prevacid for plaintiff's gastroesophageal reflux disease, and stopping all medication.

14. Declare that Defendant(s) is deliberate indifference in not consulting with the specialist before changing plaintiff's medication after his examination, and stopping all medication.

15. Declare that Defendant(s) have been deliberate indifference to plaintiff serious medical needs have inflicted unnecessary and wanton infliction of pain and suffering to and upon plaintiff without any penological justification.

16. Declare that Defendant(s) have been deliberate indifference in not providing plaintiff a diet free of grease, hot spices, oils and any other foods that may cause his symptoms or condition to woesting.

17. Declare that Defendant(s) shall provide plaintiff with a diet that is proper and adequate to help control the symptoms cause by the disease known as gastroesophageal reflux disease.

18. Declare that Defendant(s) shall provide plaintiff with the medication known as Fungus Cure until the fungus within his toe nails are cured.

19. Declare that Defendant(s) shall adhere to all advancements in and from medical studies and treatments and shall provide reasonable and adequate medical care and treatments from these finding by the State's prison officials and medical staff.

20. Declare that Defendant(s) cells used to house plaintiff have inadequate lighting to read and write, in the area in the back of the cell away from the only lighting in the cell.

21. Declare that Defendant(s) shall provide lamps and light bulbs for the cells or provide adequate lighting to do reading and writing in the cells in the area they have provided to do so.

## MONETARY DAMAGES RELIEF REQUESTED

(A) Compensatory damages will fairly compensate the plaintiff for any injury, loss, pain, or suffering resulting from the deliberate indifference against the plaintiff medical needs.

(1) In the sum of $5,000.00

(2) Defendant Sobowale pay in the sum of $10,000.00.

(3) Defendant Jiminez pay in the sum of $5,000.00.

(4) Defendant Dunne pay in the sum of $5,000.00.

(5) Defendant Johnson pay in the sum of $8,000.00.

(6) Defendant Moore pay in the sum of $10,000.00.

(7) Defendant Barnes pay in the sum of $5,000.00.

(8) Defendant G.S.P. Health Care Provider pay in the sum of $10,000.00.

(9) Defendant Sikes pay in the sum of $10,000.00.

(10) Defendant H. Smith pay in the sum of $12,000.00.

(11) Defendant Witherington pay in the sum of $12,000.00.

(12) Defendant V. Smith pay in the sum of $10,000.00.

(13) John and Jane Does reserved until known to plaintiff of these Defendant(s).

(B) Punitive damages against the Defendant(s).

(1) Defendant Sobowale pay in the sum of $25,000.00.

(2) Defendant Jiminez pay in the sum of $12,000.00.

(3) Defendant Dunne pay in the sum of $12,000.00.

(4) Defendant Johnson pay in the sum of $20,000.00.

(5) Defendant Moore pay in the sum of $25,000.00.

(6) Defendant Barnes pay in the sum of $12,000.00.

(7) Defendant G.S.P. Health Care Provider pay in the sum of $30,000.00.

(8) Defendant Sikes pay in the sum of $25,000.00.

(9) Defendant H. Smith pay in the sum of $28,000.00.

(10) Defendant Wetherington pay in the sum of $25,000.00.
(11) Defendant V. Smith pay in the of $20,000.00.
(12) John and Jane Does Reserved until known to plaintiff of these Defendant(s).

(C) Compensatory damages will fairly compensate the plaintiff for any punishment that he would not have suffered if due process had been followed.
(1) In the sum of $5,000.00.
(2) Defendant Sobowale pay in the sum of $15,000.00.
(3) Defendant Jiminez pay in the sum of $19,000.00.
(4) Defendant Dunne pay in the sum of $10,000.00.
(5) Defendant Johnson pay in the sum of $12,000.00.
(6) Defendant Moore pay in the sum of $15,000.00.
(7) Defendant Barnes pay in the sum of $10,000.00.
(8) Defendant G.S.P. Health Care Provider pay in the sum of $15,000.00.
(9) Defendant Sikes pay in the sum of $15,000.00.
(10) Defendant H. Smith pay in the sum of $15,000.00.
(11) Defendant Wetherington pay in the sum of $15,000.00.
(12) Defendant V. Smith pay in the sum of $15,000.00.
(13) John and Jane Does Reserved until known to plaintiff of these Defendant(s).

(D) Compensatory damages will fairly compensate the plaintiff for the injury, loss, pain or suffering in addition to the punishment he received.
(1) In the sum of $7,000.00.
(2) Defendant Sobowale pay in the sum of $20,000.00.
(3) Defendant Jiminez pay in the sum of $10,000.00.
(4) Defendant Dunne pay in the sum of $10,000.00.
(5) Defendant Johnson pay in the sum of $12,000.00.
(6) Defendant Moore pay in the sum of $15,000.00.
(7) Defendant Barnes pay in the sum of $10,000.00.
(8) Defendant G.S.P. Health Care Provider pay in the sum of $20,000.00.
(9) Defendant Sikes pay in the sum of $15,000.00.
(10) Defendant H. Smith pay in the sum of $15,000.00.
(11) Defendant Wetherington pay in the sum of $15,000.00.
(12) Defendant V. Smith pay in the sum of $15,000.00.
(13) John and Jane Does Reserved until known to plaintiff of these Defendant(s).

(E) Punitive damages against each defendants whom liable.
(1) In the sum of $9,000.00.
(2) Defendant Sobowale pay in the sum of $25,000.00.
(3) Defendant Jiminez pay in the sum of $15,000.00.
(4) Defendant Dunne pay in the sum of $20,000.00.
(5) Defendant Johnson pay in the sum of $20,000.00.
(6) Defendant Moore pay in the sum of $25,000.00.

(7) Defendant BARNES pay in the sum of $20,000.00.
(8) Defendant G.S.P. Health Care Provider pay in the sum of $35,000.00.
(9) Defendant Sikes pay in the sum of $20,000.00.
(10) Defendant H. Smith, pay in the sum of $30,000.00
(11) Defendant Wetherington pay in the sum of $30,000.00,
(12) Defendant V. Smith pay in the sum of $25,000.00,
(13) John and Jane Does Reserved until know to plaintiff of these Defendant(s),

(F) Compensatory damages will fairly compensate the plaintiff for the deprivation of plaintiff's Rights.
(1) In the sum of $10,000.00,
(2) Defendant Sobowale pay in the sum of $10,000.00,
(3) Defendant Jiminez pay in the sum of $5,000.00,
(4) Defendant Dunne pay in the sum of $5,000.00,
(5) Defendant Johnson pay in the sum of $10,000.00,
(6) Defendant Moore pay in the sum of $10,000.00
(7) Defendant BARNES pay in the sum of $15,000.00,
(8) Defendant G.S.P. Health Care Provider pay in the sum of $20,000.00
(9) Defendant Sikes pay in the sum of $20,000.00
(10) Defendant H. Smith pay in the sum of $20,000.00
(11) Defendant Wetherington pay in the sum of $20,000.00,
(12) Defendant V. Smith pay in the sum of $20,000.00.
(13) John and Jane Does Reserved until Known to plaintiff of these Defendant(s).

(G) Punitive damages Against each defendants whom liable for depriving plaintiff of his Rights.
(1) In the sum of $10,000.00,
(2) Defendant Sobowale pay in the sum of $25,000.00.
(3) Defendant Jiminez pay in the sum of $10,000.00,
(4) Defendant Dunne pay in the sum of $10,000.00,
(5) Defendant Johnson pay in the sum of $20,000.00,
(6) Defendant Moore pay in the sum of $20,000.00,
(7) Defendant BARNES pay in the sum of $25,000.00,
(8) Defendant G.S.P. Health Care Provider pay in the sum of $35,000.00,
(9) Defendant Sikes pay in the sum of $25,000.00,
(10) Defendant H. Smith pay in the sum of $25,000.00,
(11) Defendant Wetherington pay in the sum of $25,000.00,
(12) Defendant V. Smith pay in the sum of $25,000.00.
(13) John and Jane Does Reserved until Known to plaintiff of these Defendant(s),

## PROTECTION ORDER

The Defendants is in the position to control plaintiff mail to this court. The plaintiff

VI.    Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

will pursue this civil Action to it fullest and he is indigent and must rely on the Defendants to issue stamps and mail his pleading, motions and briefs to this Court in this Action. That this Court issues a Protection Order to the Defendants that they shall not interfere, obstruct, delay or Restrict the plaintiff or mail in anyway during the course of this civil Action. And no form of Retaliation Against plaintiff or Any inmate(s) witness(es) use in this case from the Defendants, Prison officials and state officials.

CONCLUSION

Wherefore, for all the Above And foregoing Reasons, plaintiff prays that this Honorable Court grant all or part of the Relief plaintiff have so requested in this civil Action, And grant all other Relief that it find plaintiff is entitled in this civil Action this plaintiff prays And will Always prays; Respectfully,

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _1st_ day of _August_ , 20 _02_ .

Prisoner No. _EF-274046_                        _Jimmy Rogers_
                                                (Signature of Plaintiff)

-41-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JIMMY ROGERS, PRO SE.,
        Plaintiff.                    §
                                      §    CIVIL ACTION No.
   VS.                                §    _____
ADEWUNMI SOBOWALE, et al.,            §
        Defendant(s).                 §

## DECLARATION OF PLAINTIFF

Comes Now, Jimmy Rogers, plaintiff in the above styled Action and make this his Declaration In support of his Motion for a Temporary Restraining Order and Preliminary Injunction.

        Jimmy Rogers, declares under penalty of perjury:

1. I am the plaintiff in this case. I make this declaration in support of my motion for Temporary Restraining Order and a Preliminary Injunction to ensure that I receive necessary medical care, meaningful access to court, adequate lighting in cell and due process, a state created protected liberty interest.

2. As set forth in the complaint in this case, for a number of years before going to Augusta State Medical Prison. I had repeatly complain of gas, heartburn and reflux, during that time I was given and prescribed a diet, antacid and/or Tagamet for ulcer. After, in 1995 the diet was discontinued, My ulcer healed, but still had the symptoms of heartburn, gas, and acid reflux.

3. When I continued to complain about heartburns, gas, and reflux and prescribed several types of medications, metoclopramide (Reglan) for a stomach bacteria from taken large and excessive amount of antacid; Maalox, Mylanta, cimetidine and Ranitidine that did not control the symptoms. Finally I was given x-rays and I was found to have a (hi-hy) hernia (a faulty value of the esophageal sphincter) I was prescribed cimetidine, ranitidine and antacids, on these medications that gave little or no relief from eating. When I continued to complain I was given Prevacid once or twice and excessive amount of these medications after I eat to get some relief which I would take large or put back on the medication that gave little or no relief which I would take large or excessive amount of these medications after I eat to get some relief. I was given x-rays and told that I did not have a (hi-hy) hernia, which P.A. Jiminez had stated to me after the first x-ray I would have the problems the rest of my life. I inform her of the excessive and large amount of the medications I had to take to control the symptoms after I eat the morning and evening meals, on the medications other then Prevacid.

-1-

4. I was still having heartburns, gas and reflux and was prescribed cimetidine, ranitidine, and antacids. When I informed P.A. Simminez that taking the food in the morning and evening I would have heartburns, gas, and reflux, I ask for a diet and the A shake there was no diet. P.A. Simminez put in a report about the endoscopic examination and stomach swab. I was given Prevacid, the prescription of Prevacid was not taken and when I complained of the symptoms and request to be put back on Prevacid, I was told by P.A. Simminez that I would not get Prevacid until after the examination when they find out what was wrong with me. And then I would receive Prevacid.

5. I was sent to Augusta State Medical Prison to consult with a gastroenterologist having explained the problems with the food and heartburns, gasses, and reflux the gastroenterologist prescribed to me Prevacid, and so far a diet for my examination, I was transferred to Augusta State Medical Prison and the gastroenterologist gave me an endoscopic examine, and found stomach swab. The gastroenterologist found that I had a acid reflux diaphragm, and no bacteria was found in the stomach which he placed in my health records.

6. After returning to Georgia State Prison after the examination the medication of Prevacid was change, the change to the specialist direction of Prevacid and contrary to direction despite my repeated requests that it was a number of food items that I could not eat without having heartburns, gas, and reflux for four to six hours after the morning and evening meals, and the medication of cimetidine, ranitidine, metaclopramide (Valtrex) and antacid prescribed I would have to take excessive amount because the medication gave little or no relief, and at time no medication would be given to me.

7. On information and belief, I have not been provided with a diet because this was discouraged as a part of the State Prison policy at Georgia State Prison that have this problems of gastroesophageal reflux disease. Despite the research, finding and publication that frequent heartburn and acid reflux is link to cancer of the esophagus, I have heartburns and acid reflux for about 4 to 6 hours in a few years at this rate, I am at the greatest risk of developing cancer in a few years at this rate, I am at the greatest risk of esophageal reflux disease the State medical staff and prison officials refuse to provide Prilosec, Nexium, Prevacid, and diet to control the Reflux which is a most threatening disease. Unless the condition become i.e. threatening which is a most deadly form of esophageal cancer. That people treatment i.e. Fungus Cure. Same w/H. Fungus Cure. and cost.

8. Because I am receiving inadequate medical treatment for my medical needs my condition will

Not Allow me to consume the Regular food items in/on the morning and evening meals or any food items that contain or have grease, oil, spice or any food items that cause the symptoms of heartburn, gas or reflux. I am force to suffer either way by the inadequate medical care. When I eat the food items heartburn, gas and reflux for hours is what I have and when I don't eat the food items I go hungry for hours. Each day I have pain and suffering one way or the other, and the lost of weigh because Prevacid, Prilosec or Nexium is withheld or no medication is provided and medication that give little or no relief.

9. I have toenails fungus I took the medication Griseofulvin for it for three (3) months and after there was no change in the nails. After I complained and ask for the medication known as Fungus Cure. I was issued and prescribed Griseofulvin again and told this time I would have to take it about a year and at the same time it is the possibility that this medication will destroy the/my liver.
The fungus in my toenails cause the nails to come off, soreness and pain, being deformed in growth, also because of the deformed growth the nails are hard to keep trimmed and become infected. A possible risk of the lost of a body part(s).

10. I am being forced to participate in the warden's inspection program when he or his appointed designee hold their inspection of all institutional facilities and equipment also touring visitor(s) or touring group(s) inspection s. I am to present myself in the form of attention, I am to be inspection ready at 8:00 am. And stay inspection ready until 4:30 p.m. At which time I am not allowed to prepare or work on any legal petition, brief, motions or use any legal materials such as transcripts, books, and research materials during that time.

11. I am intimidated, threaten, harassed and receive punishment without due process when the warden or his appointed designee(s) find me unable to store my legal materials for inspection or caught doing any legal activity during the hours that I am to be inspection ready.

12. I am housed in a cell where the light is at front of the cell, some inmates have lamps to use in the back of the cell where there is a shelf to do reading and writing. I request one from prison officials who said they was on order, later alleged the company sent the wrong lamps. I got a lamp from another inmate that did not have a bulb. I request one there was none, but other inmate was coming up with light bulbs. A inmate gave me a bulb for the lamp. The prison officials is not and refuse to give lamps and bulbs because of oven making, and refuse to give adequate lighting in the assigned cell to do reading and writing in the area they have provided.

13. My toenails are infected with fungus, I normally take care of them the best way I can by splitting the infected nail, using a razor blade to trim them because the small nail clippers, I have to force them onto the nails which cause them to become sore and infected, My heart burns, gas and reflux are normally control with Prevacid without any problems, Allow me to consume the food items that I can't eat on other medications, without taken large or excessive amount or don't eat. I normally seek out inmates who have light bulbs for sell or able to get one to have adequate lighting in the area in the cell to do my reading and writing or sit in lighted area.

The State having adopted prison rules and regulations that give me a created liberty interest which are protected by due process clause that the prison officials have deviated from depriving me of my 1st, 5th 8th, and 14th Amendment Rights in which I don't have to participate in or is the subject of any type of inspection of the Warden, nor being force to express myself in the form of attention or make any gestures in any form in prison officials present, having no legitimate penological or administrative interest.

14. I am suffering irreparable harm in the form of physical pain and suffering an increasing risk, that of erosion of my esophageal that will never be restored to it full usefulness, Damage to my eyes that cannot be repaired from inadequate lighting, A possibility of Risk of losing part of body from toenails infection. Unknown damage from taken large and excessive amount of medications that give little or no relief from the medications that's effecting other body organs and it function which may never be restored to it full usefulness within me.

I am being deprived of my constitutional rights by prison officials and the continual deprivation of those rights I am suffering irreparable harm, I am at risk to develop cancer even faster because of my twice daily heartburn, reflux or both and it unknown if I have the symptoms while I am asleep.

15. Defendant Sobowale is the Medical Doctor at Georgia State Prison is responsible for the issue of medication and any type treatment needed for plaintiff's medical needs.

16. Defendant Moore is the Deputy Warden for Care and Treatment and in charge of seeing that plaintiff receive adequate and reasonable medication and treatment for his medical needs and provided with basic necessary to achieve a certain goal of care that do not effect plaintiff health.

17. Defendant Dunne is the Medical Doctor at Georgia State Prison is responsible for the issue of medication and any type treatment needed for plaintiff's medical needs.

18. Defendant Lowry is/was the Medical Doctor at Georgia State Prison is/was responsible for the issue of medication and any type treatment needed for plaintiff's medical needs.

-4-

19. Defendant Jiminez is the Physician Assistant at Georgia State Prison is Responsible for seeing and consulting with plaintiff about his medical problems and giving the doctor a full report of the medical problems and recommendation.

20. Defendant Johnson is the Medical Director at Georgia State Prison is Responsible for supervising, controling and managing the actions of this medical department and it personals, making sure that plaintiff receive adequate and reasonable medical treatment

21. Defendant Georgia State Prison Health Care Provider is the company that under contract to provide workers in the medical department to provide their knowledge and training for plaintiff's health care.

22. Defendant Barns is the Governor of the State of Georgia is Responsible for the allocation of money for plaintiff's health care needs.

23. Defendant Sikes is the Regional Director is Responsible for supervising, controling and managing the prisons in his Region and the care and treatment of the prisoners in his Region.

24. Defendant H. Smith is the Warden of Georgia State Prison is Responsible for supervising and managing, controling the prison and the care and treatment of the prisoners under his control.

25. Defendant V. Smith is the Unit Manager at Georgia State Prison is Responsible for supervising, managing and controling the Unit and the care and treatment of the prisoners in his Unit under his control.

26. Defendant Wetherington is the Commissioner of the Georgia Department of Corrections is Responsible for supervising, managing and controling all the prisons and prisoners in the State of Georgia and the care and treatment of all prisoners.

27. Together, these defendants have Responsibility for providing the plaintiff the necessary medication to control his gastroesophageal reflux disease, necessary diet, adequate lighting in cell, meaningful access to court, freedom from intimidation, threats, harassment and punishment without due process and afforded state created liberty interest that is protected by due process clause as well as the ability to arrange adequate and reasonable care and treatment, and afford all the Rights prisoners is/are entitled to under Federal and State Constitution, statutory Rights, Federal and State laws, Rules and Regulations of the Board of the Georgia Department of Corrections.

28. For the reasons set forth in the memorandum of law filed with this motion, the plaintiff is entitled to a temporary Restraining order Requiring the defendants to arrange for providing plans of treatment and care for gastroesophageal reflux

disease, continuance issuing of Prevacid, Prilosec and Nexium for gastroesophageal reflux disease, that is cause by a faulty valve or other conditions, arrange for the providing of the medication known as fungus cure, adequate lighting in cell, cease inspection of plaintiff using harassment, intimidation, threats and forcing to stand in or at any form of attention, punishment without due process, denying, obstruction, abridging, impairing and restriction of legal activity, and the denying of any state created liberty interests, and a plan of treatment by a qualified specialist for gastro-esophageal reflux disease, and a preliminary injunction requiring the defendants to carry out that plan of treatment and care, requiring the defendants to cease, inspection of plaintiff, using harassment, intimidation, threats, forcing to stand in or at any form of attention, punishment without due process, denying, obstructing, abridging, impairing and restriction of legal activity, denying of state created liberty interests all other acts or action that deny the Rights of prisoners without due process. A plan of treatment by a qualified specialist for toenail fungus and make the medications fungus cure and lamisil tablets available, also carry out the specialist plan of treatment. That plaintiff is entitled to the advancement in medical treatment and care for his medical needs.

For the foregoing reasons, the Court should grant the plaintiff's motion in all respects.

Pursuant to 28 U.S.C. 1746, I declare under Penalty of Perjury that the foregoing is true and correct to the best of my knowledge.

Sign, *Jimmy Rogers*

Date: 8-1-02

Jimmy Rogers
EF-274046
Georgia State Prison
100 Ga Hwy. 147
Reidsville, Georgia
                30499

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JIMMY ROGERS, PRO SE,          §      CIVIL ACTION NO.
          Plaintiff,           §
    VS.                        §      _____
ADEWUNM SOBOWALE, et al.       §
          Defendant(s).        §

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND EMERGENCY MOTION FOR TEMPORARY RESTRAING ORDER
## WITH AN PROTECTION ORDER

Comes Now, Jimmy Rogers, plaintiff in the Above styled Action And files His his Motion For Preliminary Injunction And Emergency Motion For Temporary Restraing Order with An Protection Order.

## STATE OF THE CASE

Plaintiff Jimmy Rogers is a State Prisoner At Georgia State Prison, Reidsville (Tattnall County) Georgia. The defendant(s) Are Prison officials, doctor, physician Assistant And governor. Plaintiff having complained About heartburns, gases, And Refluxs for several years. Doctor Lowry, Jiminez prescribed several medications issuing metocloPramide, Maalox, Mylanta, Cimetidine, Ranitidine And Antacid And plaintiff informed them that the medications was Not controling his symptoms that they was given little or No Relief And last up to four(4) or five (5) hours After he eat his morning And evening meals.

Plaintiff was given x-Rays and found to have A(hi-hy) hernia in which Defendant Jiminez explain Explain that it would not go Away And be with me for the Rest of my life. Doctor Lowry continued to prescribed cimetidine, Ranitidine And Antacids After plaintiff continued to complaine of his symptoms, he was sent to Augusta State Medical Prison to see A specialist And for An endoscopic examination And stomach swab. Plaintiff having consulted with the specialist And he prescribed Prevacid. When plaintiff Returned to Augusta Medical Prison for his examination the specialist found that plaintiff was suffering from Axited diaphragm And No bacteria from the stomach swab.

Afterward, About two (2) months Defendant Sobowale, stop the prescription of Prevacid and

-1-

begin prescribing cimetidine, and antacid plaintiff made several Requests and filed grievances and was not issued Prevacid; Plaintiff then filed an Administrate Action named all the food items which he had informed Defendant Sobowale and Jiminez that could not eat on, cimetidine, metoclopramide, ranitidine and antacids which gave little or no relief from his symptoms, and that with Prevacid he could eat the food items. Plaintiff was issued Prevacid for three (3) months or 90 days and then issue ranitidine leaving plaintiff with the choice of suffering with heartburn, gas and reflux in turn of damaging his esophagus and develop cancer, or suffer with being hungry and damaging body organ and the lost of weigh from not eating.

Plaintiff complained of his toenail fungus, Defendant Sobowale prescribed the medication Griseofulvin, Defendant Jiminez stated that plaintiff would have to take the medication for three (3) months. After the three months of taking the medication (which she explained that the medication could destroy the liver) there was no improvement. Defendant Jiminez informed plaintiff that the only way to cure the fungus was to have the nail removed so they wont grow back.

After filing a grievance requesting to be provided with the medication fungus cure and denied. Plaintiff complained of his toenail fungus again Defendant Sobowale prescribed Griseofulvin and that it will have to be taken for one year. Plaintiff toenails are infected with fungus that make his toe sore, get infected, deformed grow that they are hard to trim, and can not get the medication fungus cure to cure the fungus, or issued Lamisil Tablets known medication for toenail fungus cure.

Plaintiff is housed in a cell with inadequate lighting to do reading and writing in the area that is provided by Defendant Wetherington, N. Smith, Sikes, and V. Smith after filing a grievance. When plaintiff requested a lamp and bulb he was told they was not being issue by Sergeant McNeal, Plaintiff will suffer damaging of his eye sight or buy lamp or bulb from inmate who are able to get them, having a black market.

Plaintiff is forced to participate in the defendant(s) inspection from 8:00 o'clock A.M. to 4:30 o'clock P.M. During that time plaintiff is forbided from doing any legal work or legal activities in his cell. Defendant(s) is violating plaintiff right to meaningful access to the court. Defendant(s) are using terrorism to have plaintiff and other inmates to comply to their demands of stand at a form of attention in their present and inspections by harrassing, intimidation, threating and punishment without due process where there is a state created liberty interest given to plaintiff by the Board of Correction for the Department of Corrections and Federal and state laws.

Which is no more then another form of Osama Bin Laden and his terrorist group that is in control of America's citizens by state laws.

Plaintiff alleges that he has been denied care for a serious medical need contrary to a specialist instruction and denied medication to cure toenail fungus, such conduct by prison officials that will only prescribe adequate medication for short period of time and long period of time on medications that give little or no relief, and at time no medication at all, is a clear violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285 (1976) (Noting that intentionally interfering with the treatment once prescribed is a form of unlawful deliberate indifference.) Also see Whitley v. Albers, 425 U.S. 312, Canton v. Harris, 489 U.S. 378 (1989).

Plaintiff alleges that he is being denied meaningful access to the courts because of having to be inspection ready. Defendants made their inspection rules applicable to plaintiff and he is to stay inspection ready for any type of inspection from 8:00 o'clock a.m. to 4:30 o'clock p.m. And during this time plaintiff is forbidden to prepare any legal documents or do any legal activities during that time is a clear violation of the First Amendment.

Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747( ) (Noting access of prisoners to courts for purpose of presenting petitions for habeas corpus may not be denied or obstructed. The Supreme Court held that the regulation violated the principle that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus. Exparte Hull, 312 U.S. 546, 61 S.Ct. 640 (1941) Also see Adams v. James, 784 F.2d 1077 (11th Cir 1986) (stating but, in the absence of a legitimate penological or administrative reason for restricting the activities of a jailhouse lawyer, prison official may not interfere with such activities.)

Plaintiff alleges that he have inadequate lighting in his assigned cell in the area provided by the Defendant(s) to do his reading and writing. Threaten to damage or destroy plaintiff's eye sight because the Defendant(s) refusal to provide lamps and light bulbs or adequate lighting in the area, is a clear violation of the Eighth Amendment.

Eighth Amendment protection against deliberate indifference to prisoner health problems extends to conditions that threaten to cause health, problems in future, as well as current serious health problems, U.S.C.A. Const. Amend. 8.

Fed. West Criminal Law Key No. 1213.10 (3)
Fed. West Prison Key No. 17 (2)

- 3 -

serious medical needs and the study that have linked heartburn to cancer that with almost daily heartburn, the overall risk of esophageal cancer is a horrifying 43 times greater than average, and the study found the risk of cancer was almost eight (8) times higher among people who suffered heartburn, regurgitation or both at least once a week, Acid Reflux at night was associated with a risk nearly 11 times higher, While up to one fifth of Americans get heartburn, only about 12,500 people a year develop esophageal cancer.

Plaintiff is suffering heartburn and Reflux (Regurgitation) for four (4) to five (5) hours from his morning and evening meals each day and after many Requests. The defendant(s) only provide Prevacid for a short period of time, and long period of time on various type of medication that give little or no relief and in which times plaintiff can not eat food items or have to take or consume in excessive amount of the medications, a unknown risk from this excess consumption of these various type of medications and the Risk of esophageal cancer, threaten to cause plaintiff health, problems in the future, is a clear violation of the Eighth Amendment. Also violated when no medication is given.

Eighth Amendment protection against deliberate indifference to prisoner health, problems extends to conditions that threaten to cause health, problems in future, as well as current serious health problems. U.S.C.A. Consti. Amend. 8.

Fed. West Criminal Law Key No. 1213.10 (3).
Fed. West Prison Key No. 17 (2).

Plaintiff alleges that he have a state created liberty interest which is protected by due process not to be subjected to any type of inspections by the Board of Corrections for the Georgia Department of Corrections. Defendants is applying an inspection(s) upon plaintiff by using harassment, intimidation, threats, and punishment without due process and forcing plaintiff to stand at a form of attention. The Rule mandates inspections of all institutional facilities and equipment with instruction of a written report of deficiencies and action taken for correction, Is a clear violation of the Fourteenth, Eighth, Fifth and First Amendments.

State procedures may create liberty interests that are deprived when state actors deviates from these procedures, and which thus come within scope of protection of due process clause. U.S.C.A. Consti. Amend 14.

Fed. West Key Const. Law No. 2541.1, 255 (1).

As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm. Under the United States Flag, its citizens living under threats, intimidation, harassment and punishment without due process might as well beliving under Al Qaeda Rules.

Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976)

Newson v. Norris, 888 F.2d 371, 378 (6th Cir 1989)

Phillips v. Michigan Dept. of Corrections, 731 F.Supp. 792, 801 (W.D.Mich 1990) Aff'd 932 F.2d 989 (6th Cir 1981)

Inadequate lighting in cell's damage and destroying Plaintiff's eyesight and denying him meaningful access to the courts.

In Addition, the plaintiff is threatened with irreparable harm because of the nature of his injury, A hailed diaphragm that causing the symptoms of heartburn and reflux daily, cancer, lost of a sufficient amount of food At morning and evening meals, because plaintiff suffer with the disease known As gastroesophageal reflux disease. More plaintiff suffer with toenail fungus that keep his nail sore and infected, and possible lost of his toe(s) or more from An infection. If he does not receive proper treatment at the proper time he may never live A normal life again.

Subsequently plaintiff is forced to participate in the defendants inspections, which by Rules and regulations that the state have created liberty interest which are protected by the due process clause that plaintiff do not have to be inspected or preform any acts or actions during their inspection of the institutional facilities and equipment to detect and correct deficiencies. Plaintiff having to be and stay inspection ready from 8:00 o'clock A.m. to 4:30 o'clock pm that during this time period, defendants stop all of plaintiffs legal activities in the cell, he can not prepare A habeas petition, civil action or Any of his court documents and plaintiff have to stay inspection ready for any type of inspection.

Plaintiff is met with frustration, aggravation and hindering to make arguable claims that have value, in his effort to bring And present meritorious claims and all claims he may have for Relief. If he does not have meaningful access to court he may lose the claims, or those claims for relief.

The balance of handships favors the plaintiff.

In this case, the present suffering of the plaintiff and his potential suffering if he continue to have about eight(8) to ten(10) hours of heartburn and reflux or both he is at An enormous risk to develope esophageal cancer. The inadequate lighting in the cell plaintiff will or cause damage or destruction of his eye sight. The continuance denial of preventing plaintiff from preforming any legal activities during the time of 8:00 o'clock A.m. to 4:30 o'clock p.m, he will never have meaningful access to the courts in preparing meritorious claims and Arguing the same in brief and motions, more or less meet any court deadline, An enormous Risk to lose his case. The suffering the defendants will experience if the court grant the order will consist of providing the plaintiff with adequate and reasonable medical care, the medication(s) Prevacid, Prilosec, or Nexium that control Acid reflux disease, and a suitable doctor and carry out the doctor orders.

The toenail fungus which cause the continuance deformed grow, soreness and infection to plaintiff toe-nails, he will continue to suffer with this problem unless treated with proper medication As fungus Cure or Lamisil Tablets, and a suitable doctor and carry out the doctor orders, adequate lighting in cell for reading and writing.

Defendants hold ordo their inspections as provided by the Rules and Regulations of inspecting the institutional facilities and equipment to detect and correct deficiencies and not have plaintiff or force him to participate in their inspection would give him meaningful access to court to present any and all meritorious claims he may have, some thing that the defendants do, and ARE obligated to do, for member of the prison population on a daily basis, The defendants hardship amounts to no more than business as usual inside the prison walls.

The plaintiff has a great likelihood of success on the merits. What defendants have done intentionally interfering with medical treatment once prescribed by a specialist to control plaintiff Acid Reflux disease and is prescribed the same medication that did not control his disease and give little or no relief, and at time stop prescribing any medication. Defendants gave a medication for toenail fungus for plaintiff to take for three (3) month after taken medication there was no improvement in the nails when he requested fungus cure this medication was denied, returning to medical for the toenail fungus he was prescribed the same medication with the information that he would have to take it for a year.

This was specifically singled out by the Supreme Court as a example of unconstitutional deliberate indifference to prisoners medical need. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285 (1976). Many other courts have held that failure to carry out physicians order is unconstitutional. See, e.g. Aswegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992) (Repeated failures to provide medications timely); Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992) (Failure to provide tuberculosis medication) cert. denied-U.S.- (1993); Pace v. Solem, 858 F.2d 385, 387-88 (8th Cir. 1988) (Failure of prison doctors to carry out surgery scheduled before plaintiffs incarceration); Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988) (Failure to return patient to VA hospital for treatment for Agent Orange Exposure); Lafaut v. Smith, 834 F.2d 389, 393-94 (4th Cir. 1987) (Failure to provide Rehabilitation therapy recommended by orthopedic specialist).

Plaintiff have a great likelihood of success on the merits. What defendants is doing intentionally refusing to provide and prescribe Prevacid, Prilosec, and Nexium medications that have been develop for persistent heartburn due to Acid Reflux disease that can be serious, because, over time, Acid Reflux can erode or wear away the delicate lining of his esophagus a condition known as erosive esophagitis, which then creates a condition known as Barrett's esophagus once this happens, the cells can become precancerous, then malignant. Same that working in a area where there is inadequate lighting to read and write destroy and damage his future eye sight, and his toenails will continue, to be infected, debemed grow, and sore from the fungus and a unknown risk if the infection should spread to other body parts. Endangering human health, is sufficient to show an Eighth Amendment violation. McKinney v. Anderson, 924 F.2d 1500 (9th Cir. 199-) (Non-smoker cruel and unusual punishment, if it is at such levels and under such circumstances as to pose an unreasonable risk of harm to an inmates health, not the right to a smoke-free environment but the health risks to which the plaintiff is exposed.)

Helling v. McKinney, 113 S.Ct. 2475 (1993) (held that plaintiff had stated a valid Eighth Amendment claim with respect to the risk of harm to his future health.)

Plaintiff has a great likelihood of success on the merits. What defendant Arel is doing deviating from the Rules and Regulations of the procedures which come within the scope of protection of due process, forcing plaintiff to comply with an inspection where he has a state created liberty interest). Defendants are using threats, intimidation, harassment and punishment with out due process on plaintiff to be part of the inspection, shows a 1st, 5th, 8th, and 14th Amendment violations.

Woodard v. Ohio Adult Parole Authority, 107 Fed. 3d. 1178 (6th Cir. 1997) (there the court state both state law and due process clause it self may create protected liberty interest.)

Sandin v. Conner, — U.S. —, 115 S.Ct. 2293, — L.Ed.— ( ) (state may under certain

circumstances in adopting prison regulations create liberty interests which is protected by due process clause); Wolff v. McDonnell, 418 U.S. 539, 945 Ct. 2963, 41 L.ed 2d 935 (1974)(due process)

Plaintiff has a great likelihood of success on the merits, what defendants is/are doing denying, obstructing, abridging, impairing and restricting plaintiffs legal activities having a inspection rule for plaintiff to be and stay ready for any type of inspection from 8:00 o'clock a.m. to 4:30 o'clock p.m. in which the defendants forbid any type of legal activities in the cell during these hours. Because of defendants rule plaintiff is frustrated, aggravated and hindered in his effort to bring and present meritorious claims, all claims he may have for relief, and restricting plaintiff ability to communicate with this courts, to make arguable claims that have value, is a denial of meaningful access to court.

Plaintiff is also burden under such rule w.ithout adequate lighting in his assigned cell provided by the defendants further restrict plaintiff legal activities, is a denial of meaningful access to courts shows a First and Fourteenth Amendments violation. This was specifically singled out by the Supreme Court as an example of unconstitutional to deny of meaningful access to court to prisoners who seeks a writ of habeas corpus and further a civil action, finally all legal activities of prisoners.

Johnson v. Avery, 393 U.S. 483, 89 S.ct. 747, 21 L.ed 2d 718 (1969); Sigafus v. Brown, 416 F.2d 105 (7th Cir 1969) cited in Adams v. James 784 F.2d 1077 (11th Cir 1986) (prisoner has the right to assist other prisoners and be his own jailhouse lawyer.); Lewis v. Casey 518 U.S. 343, 116 S.ct. 2174 (requires that the frustrated claims be arguable claims have value and are setted, bought, and sold.); Bounds v. Smith, 97 S.ct. 1491 (1977).

Plaintiff has a great likelihood of success on the merits. What defendant are/is doing is inspecting plaintiff that have no legitimate penological or administrative interest. The interest is of this institutional facilities and equipment to detect and correct deficiencies at the institution, a written report of the inspection, recommendations for correction of the deficiencies discovered, whatever action is required to correct deficiencies, a copy of the report and record for correction shall be maintained in the institutional files. Any appearance found that plaintiff is not following any rules on himself or his assiged cell he is afforded due process, and a state created liberty interest not to be inspected or forced to participate to do so conflict with paramount federal constitutional or statutory rights.

Turner v. Safley, 482 U.S. 78, 107 S.ct. 2254, 96 L.ed 2d 68 (1987) (the factor set by the Supreme court, whether there is a legitimate penal interest.); Wolff v. McDonnell, 418 U.S. 539 94 S.ct. 2963, 41 L.ed 2d 935 (1974)

The Public Interest favor the plaintiff for relief.

In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials and state officials to obey the law. Duran v. Anaya, 642 F.supp. 510, 527 (D.N.M 1986) (respect for law, particularly by officials responsible for the administration of the state's correctional system, is in itself a matter of the highest public interest.) see also Llewelyn v. Oakland County Prosecutors Office, 402 F.supp. 1393 (E.D. Mich, 1975) (the constitution is the ultimate expression of the public interest.); Younger v. Harris, 401 U.S. 37, 91 S.ct. 746, 27 L.ed 2d 669 (1971).

Plaintiff Should Not Be Required To Post Security.

Usually A litigant who obtains interim injunctive Relief is asked to post security. Rule 65 (c), Fed. R. Civ. P. However, the Plaintiff is an indigent prisoner and unable to post security. The Court has discretion to excuse an impoverished litigant from posting security. Orantes-Hernandez v. Smith, 541 F.Supp. 351, 385 N. 30 (C.D Cal. 1982); JL v. Parham, 412 F.Supp. 112, 140 (D.GA. 1976), Rev'd on other grounds, 442 U.S. 584, 99 S.Ct. 2493 (1979). In view of the serious medical danger, deny meaningful Access to court, deny of due process confronting the plaintiff, the court should grant Relief Requested without Requiring the posting of security.

## CONCLUSION

For the foregoing Reasons, the Court should grant the motion in its entirety. This is forever prays and always pray by plaintiff.

Signed *Jimmy Rogers*

Date: 8-1-02

Jimmy Rogers
EF-274046
G.S.P.
100 GA. Hwy 147
Reidsville, Georgia 30499.

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

IN REM JIMMY ROGERS, PRO SE   §   CIVIL ACTION NO.
§   _____
§
§
§

## ACCESS TO COURTS

COMES NOW, Jimmy Rogers And files with his Civil Action A motion in REM Against Georgia State Prison mailing Rule that is impeding the Right of Access to Court.

Jimmy Rogers is A state prisoner and is indigent, housed At Georgia State Prison in Reidsville (Tattnall County) Georgia, The Warden is Hugh Smith.

Inmate Rogers having prepared A civil Action with eleven (11) defendants And two copy for the Court. Because of his indigence he do not have the funds Needed to mail his civil Action to the Court. However Inmate Rogers must fill out A Request For Indigent Postage form. (SEE Attached Exhibit-A) Having done so, on August 2, 2002 put his civil Actions in the mail to the Court. On Monday August 5, 2002 the mail Room Returned All thirteen (13) civil Action he had package for the Court, with A note unsigned that it exceeded the Amount Allowed, to much for special mailing. (SEE Attached Exhibit-B)

When the mail official Returned the civil Actions Inmate Rogers was told by the Officer (J.J.) that he could only mail out the limit on special

-1-

Mailing of five dollars and forty cent (#5.40) per month. Georgia State Prison Allows indigent inmate one(1) special mailing A month but with the that the funds is a loan from the Inmate Benefit Fund which is pay back should A indigent inmate receive funds in his Account. (SEE Exhibit-A)

Due to Georgia State Prison having such a limitation of About five dollars And forty something cent on special mailing once a month Inmate Rogers can not send to this court All of the thirteen civil Action Needed to start a court proceeding and having to wait Another Month before he can send in the Remaining of his civil Actions, and Inmate Rogers is An indigent inmate At Georgia State Prison.

Inmate Rogers contends that Georgia State Prison Mailing Rule of the limit of five dollars And eighty cent per month impede the Right of Access to court. Under such limitation it violated the principle that "the State And its officers may not Abridge or impair petitioner's Right to Apply to a federal court for A writ of habeas corpus." stated by the Supreme Court in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, (— L.2d.—) this same principle Apply to civil Action As well. SEE Wolff v. McDonnell, 418 U.S.539, 94 S.Ct. 2963, 41 L.Ed. 2d 935 (1974).

And in Milhouse v. Carlson, 652 F.2d 371 (3Rd Cir 1981), the court states the Right of Access to the courts must be "Adequate, Effective And meaningful," Bound v. Smith At 822, 97 S.Ct at 1495, and must be freely exercisable without hindrance of fear of Retaliation (SEE cases cited.)

Here Georgia State Prison Mailing Room only Allows five (5) dollars And forty (40) cent on their special mailing impedes the Access to court. Inmate Rogers having to limit his defendants, brief, complaints and claims he may have or having to send to the courts portion of his Complaints, brief, etc. each month within the five dollars and forty cent limit As in the case At hand, Jimmy Rogers v. ADEWUNMI Sobwale, At. Al.

## CONCLUSION

Inmate Rogers is faced with a threaten injury in his case As well As any other cases he wish to file in a court because the violation lies in the

intent to impede his Right of Access to the court.

A legal question that CAN be Resolved to ensure Access to the court Remain freely open without Any limitation that this court And the Georgia state Attorney Without An intrusive order, but leave the prison officials the primary Responsibility for devising A Remedy.

Right of Access to courts must be Adequate, effective And meaningful And must be freely exercisable without hindrance or fear of retaliation.    U.S.C.A. Const. Amend <u>1</u>,
West Key Constitutional Law No. 328

Also, Lewis v. Casey, 518 U.S. 343
      Turner v. Safley, 482 U.S. 78
      Cruz v. Beto, 405 U.S. 319

For these reasons the Court And the State Attorney General can And may save the tax payers money And court time in litigating such a legitimate issue here, the Responsibility lies on the state And prison officials that Inmate Rogers have Adequate, effective And meaningful Access to the courts.

SEE Milhouse v. Carlson, 652 F.2d 371 (3rd Cir 1981); Furthermore, if mailed on date of deadline and outside the limit would cause Inmate Rogers to miss his court deadline when Returned.

Respectfully Submitted,

/s/ Jimmy Rogers

Jimmy Rogers
EF-274046
G.S.P.
100 Ga. Hwy. 147
Reidsville, Ga. 30499

## DECLARATION UNDER PENALTY OF PERJURY

YOU MUST DECLARE UNDER PENALTY OF PERJURY THAT THE ANSWERS AND INFORMATION YOU HAVE GIVEN HEREIN ARE TRUE AND CORRECT. GIVING FALSE ANSWERS OR INFORMATION WILL SUBJECT YOU TO PERJURY CHARGES UNDER BOTH FEDERAL AND STATE LAW:

Understanding the above, "I declare under penalty of perjury that the foregoing answers and information provided by me are true and correct.

Executed: This _13th_ day of _August_ , 20_02_ :

_____
Signature of Declarant:

C E R T I F I C A T E    O F    S E R V I C E

This is to certify that I have this day served the opposing party(ies) to this action with a true and correct copy of the within and foregoing _IN REM JIMMY ROGERS; ACCESS to COURTS_ by placing a copy of same in the United States Mail, with adequate postage thereon to ensure prompt delivery, and addressing it to:

THE Hon. Thurbert Baker
State Attorney General
132 State Judicial Building
40 Capitol Square, S.W.
Atlanta, Georgia, 30334

This _13th_ day of _August_, 20_02_.

_Jim Rogers_

Pro se

-5-

**GEORGIA STATE PRISON**
Reidsville, Georgia   30453

## REQUEST FOR INDIGENT POSTAGE

( ___ )  NON-LEGAL FIRST CLASS POSTAGE (MAXIMUM -- THREE)
AMOUNT

( ___ )  LEGAL POSTAGE (MAXIMUM -- FIVE)
AMOUNT

( ___ )  SPECIAL MAILING (MAXIMUM -- ONE)

I fully understand that the funds for the purchase of Indigent Postage will be a loan from the Inmate Benefit Fund.  If I receive any funds to my account, I will be required to reimburse the Inmate Benefit Fund in accordance with SOP IIB04-0001, Inmate Mail and Receipt of Funds.

_____   _____   _____
(Dormitory)                    (Cell #)                   (Inmate I.D. Number)

_____          _____
INMATE/PROBATIONER SIGNATURE                DATE

_____          _____
SIGNATURE OF VERIFYING STAFF                DATE
************************************************************************************

### TO BE COMPLETED BY MAIL ROOM STAFF ONLY

**NON-LEGAL POSTAGE USED:**
DATE:              MAILED TO                                              AMOUNT
_____     _____     _____
_____     _____     _____

**LEGAL POSTAGE USED:**
DATE:              MAILED TO                                              AMOUNT
_____     _____     _____
_____     _____     _____
_____     _____     _____
_____     _____     _____

**SPECIAL MAILING:**
DATE:              MAILED TO                                              AMOUNT
_____     _____     _____

**TOTAL POSTAGE USED:** _____

_____
**SIGNATURE OF MAIL ROOM STAFF**

CC:    Mail Room
          Bookkeeping
          Inmate/Probationer File

EXHIBIT-A